[L. A. No. 29672. In Bank. Jan. 30, 1970.]

ROBERT C. BARROWS et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT OF THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

## COUNSEL

Stanley Fleishman and David M. Brown for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Roger Arnebergh, City Attorney, Donald W. Mowat and Philip E. Grey, Assistant City Attorneys, and Michael T. Sauer, Deputy City Attorney, for Real Party in Interest and Respondent.

## OPINION

MOSK, J.—Petitioners in this proceeding are Richard Bright and Alexandra Hay, who acted in a play entitled "The Beard," Robert Barrows, who produced the play, and Robert Gist, the director. Bright and Miss Hay were charged with violating section 647, subdivision (a), and 311.6 of the Penal Code[1] for their performances of the play and Barrows and Gist were charged with wilfully and unlawfully aiding and abetting them in committing these violations. Approximately 40 separate charges were filed against petitioners[2] and they seek a writ of prohibition to restrain respondent court from proceeding to trial.

---

[1]Section 647, subdivision (a), provides, "Every person who . . . solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" shall be guilty of disorderly conduct, a misdemeanor.

Section 311.6 provides, "Every person who knowingly sings or speaks any obscene song, ballad, or other words, in any public place is guilty of a misdemeanor."

All references will be to the Penal Code unless otherwise noted.

[2]Each petitioner was not cited after every performance. It appears that some of the complaints were based upon the performance of the play without a permit from the Los Angeles Police Commission, as required by ordinance. However, the charges based upon the failure to obtain a permit were dismissed by the trial court and we are concerned here only with the alleged violation by petitioners of sections 647, subdivision (a), and 311.6.

Petitioners contend primarily that the statutes under which they are charged were not intended to apply to a live theatrical performance before an audience and that the application of the provisions to such performance violates their constitutional rights to free speech, due process and equal protection of the laws, in violation of the First and Fourteenth Amendments to the United States Constitution and article I, sections 9, 11, 13 and 21 of the California Constitution. We conclude, for the reasons hereinafter set forth, that the first of petitioners' contentions is meritorious.

The play was first performed on January 24, 1968, in Los Angeles. Petitioners were arrested before the performance on January 25 and they were rearrested after the first two performances the next day. Arrests or citations followed after numerous performances thereafter. Petitioners applied to the United States District Court for an injunction but that court, after issuing a temporary restraining order, ultimately refused permanent relief on the ground that no special circumstances justified its intervention.[3] The trial court overruled demurrers to the complaints and denied a motion to dismiss, and petitioners then sought a writ of prohibition to restrain the court from proceeding to trial. They appeal from denial of the writ.

█ We begin with the premise that live plays performed in a theater before an audience are entitled to the same protection under the First Amendment as motion pictures (*Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281]), magazines (*Winters* v. *New York* (1948) 333 U.S. 507, 510 [92 L.Ed. 840, 847, 68 S.Ct. 665]), and newspapers (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 265-266 [11 L.Ed.2d 686, 697-698, 84 S.Ct. 710, 95 A.L.R.2d 1412]). Long before the advent of printing and motion pictures the theater constituted "a significant medium for the communication of ideas" which affected "public attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression." (*Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 501 [96 L.Ed. 1098, 1105, 72 S.Ct. 777].)[4]

---

[3]The decision was rendered by a three-judge court, with one judge dissenting. The majority opinion stated that it was doubtful the state courts would construe section 647, subdivision (a), as applicable to plays and that section 311.6 would probably be found constitutional. According to the dissenting judge, the relief petitioners sought was appropriate because both statutes were unconstitutional as applied to theatrical performances. (*Barrows* v. *Reddin* (C.D. Cal. 1968) 301 F.Supp. 574.)

[4]Use of the theater to depict current events, as distinguished from religious pageantry, was first attempted by Aeschylus, and refined by Euripides and later by Aristophanes who mastered comedy.

Fear of the political potential of the theater was manifest when James I published an ordinance forbidding representation of any living Christian king upon the stage. Since 1624 the lord chamberlain has had censorship control of the English theater. (See VII Ency. Soc. Sciences, 598 ff.)

An analysis of the background of section 647 and some related sections of the Penal Code is necessary to fully comprehend the issues before us. Section 647 is a statute designed to prohibit vagrancy. Prior to 1961, subdivision 5 of the section defined a vagrant as "[e]very lewd or dissolute person, or every person who loiters in or about public toilets in public parks." The statute was characterized by a legislative committee as "ridiculously outdated" and the committee recommended that a substantial revision of its provisions be undertaken. (See Report of Assembly Interim Com. on Criminal Procedure, vol. 2, Appendix to Journal of Assembly, Reg. Sess. 1961, pp. 9, 12 et seq.) The committee approved a revision proposed by Professor Arthur H. Sherry that a statute in substantially the form of section 647, subdivision (a), be adopted in lieu of the then existing section 647, subdivision 5. Professor Sherry, in a comment on the proposal, stated that it "departs from the concept of status and deals directly with socially harmful lewd or dissolute conduct, that is, such conduct when it occurs in public view." (See *Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision,* 48 Cal.L.Rev. 557, 569.) The committee report quoted this comment and expressed its full concurrence in the language of the section as proposed. (Report of Assembly Interim Com. on Criminal Procedure, *op. cit.,* p. 13.)

In the same year section 647 was revised the Legislature amended section 290 of the Penal Code. That section requires a person who has been convicted of certain sexually related offenses or who has been adjudged to be a sexual psychopath to register with the chief of police in the city in which he temporarily or permanently resides. Each change of address of a registrant must be reported within 10 days, and failure to comply with the registration requirement is a misdemeanor. The section applies automatically when a person is convicted of one of the enumerated offenses and imposes a lifelong requirement of registration and re-registration absent a court order releasing the registrant from the penalties and disabilities of his conviction under section 1203.4[5] (*People* v. *Taylor* (1960) 178 Cal.App.2d 472, 477 [3 Cal.Rptr. 186]) or the issuance of a certificate of rehabilitation under section 4852.01 et seq.[6] (§ 290.5). ■ The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar

---

[5]Section 1203.4 sets forth a procedure through which a defendant who has fulfilled the conditions of his probation or has been discharged from probation may be released of the penalties and disabilities resulting from his conviction.

[6]Section 4852.01 et seq. provide that a person convicted of a felony who has been released from prison may apply for a certificate of rehabilitation and set forth the procedure for obtaining such a certificate.

offenses in the future. (*Kelly* v. *Municipal Court* (1958) 160 Cal.App.2d 38, 45 [324 P.2d 990].)

Among the persons who are required to register pursuant to section 290 are those who are convicted of rape, enticement of a female under 18 for purposes of prostitution (§ 266), incest (§ 285), sodomy (§ 286), lewd or lascivious acts upon the body of a child under 14 (§ 288), exposing one's person in a public place (§ 314) or loitering about any public toilet for the purpose of engaging in or soliciting a lewd or lascivious act (§ 647, sub. (d)). Also required to register under section 290 are those convicted of violating subdivision (a) of section 647. Section 290 was amended in 1961 in the same chapter which contained the revision of section 647. (Stats. 1961, ch. 560, § § 2, 3.) The amendment, insofar as relevant here, substituted persons convicted under section 647, subdivision (a), as subject to the registration provisions for those convicted under former section 647, subdivision 5.

Another event of significance in 1961 was the thorough revision of the statutes relating to obscenity. (Stats. 1961, ch. 2147, § 5.) These provisions are now embodied in section 311 et seq. of the Penal Code. Section 311, subdivision (a), defines the term "obscene" as meaning "that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance." ■ The obscenity statutes largely prohibit conduct relating to the dissemination of obscene material, and there is no requirement that persons convicted of violating the obscenity laws must register as sex offenders.

■ These two conclusions ineluctably emerge from the foregoing analysis: first, the basic purpose of section 647 is to punish the crime of vagrancy in its various overt aspects; second, nothing in the legislative history of the section indicates that it was intended to apply to activities, such as theatrical performances, which are prima facie within the ambit of First Amendment protection.

The requirement of section 290 that persons convicted under section 647, subdivision (a), must register as sex offenders supports this view. It would be irrational to impose upon an actor in a theatrical performance or its director a lifetime requirement of registration as a sexual offender because he may have performed or aided in the performance of an act,

perhaps an obscene gesture, in a play.[7] It is an errant concept we cannot attribute to the Legislature that persons convicted of such an offense will require constant police surveillance in order to prevent them from committing similar crimes against society in the future. ■ The mere recitation of the types of crimes encompassed within the registration provisions of section 290 demonstrates that activities which enjoy prima facie protection of the First Amendment were not intended to be included within its scope. ■ That a statute which imposes the penalty of lifetime registration as a sexual offender upon those who participate in a play, merely by reason of acts committed therein, would have an inhibiting effect upon the exercise of First Amendment rights is too evident to require elaboration.[8]

Finally, a serious equal protection problem would evolve if we were to interpret section 647, subdivision (a), as respondent urges. The amendment of the obscenity statutes, section 647 and section 290, occurred in the same year and to some extent in the same enactment. Thus, the Legislature should have contemplated the effect of these statutes upon one another; yet in amending section 290 it did not require persons convicted under the obscenity laws to register as sex offenders but reiterated that those convicted under certain subdivisions of section 647 (including subdivision (a)) were required to register. It would be arbitrary and vexatious to require that persons in petitioners' position should be subject to the registration requirement, while those who have violated the laws against obscenity by selling and exhibiting obscene movies, books and pictures to minors or who employ minors for the purpose of such distribution (§§ 311.2, 311.3, 311.4) should not be subject to such a burden. Moreover, one who is found guilty under section 647, subdivision (a), because of acts committed in a live play would be covered by the registration provision, whereas a person who performed the very same act in connection with a photograph or motion picture film would not suffer this penalty.[9]

It seems evident from the foregoing that the vagrancy law, section 647,

---

[7] As we shall see, the terms "lewd" and "dissolute" as used in subdivision (a) of section 647 were held in *In re Giannini* (1968) 69 Cal.2d 563, 571 [72 Cal.Rptr. 655, 446 P.2d 535] to be identical to the term "obscene" as defined in section 311, subdivision (a).

[8] In some states the interracial amity of Harriet Beecher Stowe's Uncle Tom's Cabin would have been found to be obscene. Yet today we need not be reminded that the theater has been a significant source in the development of American politics, culture, language and mores, despite what H. L. Mencken termed its frequent "florid argot." He also credited the theater with being "one of the chief sources of popular slang." (Mencken, The American Language (1938), p.585.)

[9] Section 647, subdivision (a), is limited to a public place, a place open to the public, or one exposed to public view. A private movie studio from which the public is excluded would not fit this description.

subdivision (a), was not intended to apply to live performances in a theater before an audience.

Respondents rely upon the cases of *In re Giannini, supra,* 69 Cal.2d 563, and *Dixon* v. *Municipal Court* (1968) 267 Cal.App.2d 789 [73 Cal. Rptr. 587]. The petitioners in *Giannini* were convicted of violating section 647, subdivision (a), by performing a dance before an audience in a nightclub. We held that the performance of a dance, whether a ballet or a lesser artistic form, warranted the protection of the First Amendment, absent proof of its obscenity, but that, in determining whether the conduct of the petitioners was lewd or dissolute, the standards to be applied were those relating to obscenity as defined in section 311, subdivision (a). (69 Cal.2d at p. 571, fn. 4.) We did not discuss the registration requirement of section 290.

*Dixon* involved the application of section 647, subdivision (a), to the very play at issue here. The court, relying upon *Giannini,* held that the section was applicable to the live performance of a play in a theater but that in determining whether the acts involved could be characterized as lewd or dissolute, the standards to be applied were set forth in the law defining obscenity. The *Dixon* case recognized that conviction under section 647, subdivision (a), would subject the respondents to the registration provisions of section 290. However, the court stated that, rather than holding lewd or dissolute acts performed in a play are not proscribed, it would refrain from ascertaining whether section 290 was applicable to a conviction under section 647, subdivision (a), when it was based upon a live theatrical performance.

If section 647, subdivision (a), is applicable to a play, there is no rational basis for denying that the registration provisions of section 290 apply. There is no indication on the face of either statute that the penalties for conviction should be different if the lewd or dissolute conduct occurs, for example, in a public park, or before a theater audience. Indeed, the provisions of section 290 have been said to apply "automatically" (*People* v. *Taylor, supra,* 178 Cal.App.2d 472, 477) and it would require heroic judicial surgery to sever the penalty in one situation and not the other. It must be remembered that these sections were amended by the Legislature at the same time and in the same chapter and that one purpose for amending section 290 was to reflect that section 647, the vagrancy statute, had been revised. It is inconceivable that the Legislature, in amending section 290 to take cognizance of the changes in section 647, would have failed to indicate that some persons convicted under subdivision (a) were not to be subject to the registration requirement if that had been its intent.

While it is true that in *Giannini* we did not consider the applica-

bility of the registration provisions to convictions under subdivision (a) of section 647, the decision nevertheless appears to stand for the proposition that the vagrancy section may be applied to live theatrical performances. In light of our present focus on the statutory provision, we now clarify and modify *Giannini* to that extent and hold that such performances do not fall within the purview of section 647, subdivision (a). *Dixon* is disapproved insofar as it is inconsistent with the views expressed herein.

We come, then, to consideration of the question whether the prosecution of petitioners is justified under section 311.6 of the Penal Code. The section, as we have seen, makes it a misdemeanor to sing or speak "any obscene song, ballad, or other words, in any public place." It was originally enacted in 1872, at which time only the singing of obscene words was prohibited and it was illegal to do so not only in a public place but also "in any place where there are persons present to be annoyed thereby." (Deering's Ann. Code, § 311, subd. 5.) The prohibition referring to spoken words was added to the statute in 1931 and a curious provision inserted to the effect that the section would not apply to an actor unless and until a court decided that he had violated the statute; but this dispensation was withdrawn if a complaint was filed against a manager, producer or director charging a violation of the section and the guilty words were uttered by the actor during the pendency of the complaint. (Stats. 1931, ch. 759, § 1.)

In 1961 the section was amended in the course of overall revision of the obscenity laws. The provision added in 1931 immunizing an actor from prosecution under certain circumstances was deleted entirely, as was the proscription against speaking or singing obscene words "in any place where there are persons present to be annoyed thereby." (Stats. 1961, ch. 2147, § 5.)

In determining the definition of the word "obscene" as used in section 311.6 we turn to section 311 of the Penal Code. Section 311 and section 311.6 are both contained in chapter 7.5 of title 9 of the Penal Code. Section 311 provides, *"As used in this chapter*: (a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the *matter*, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is *matter* which is utterly without redeeming social importance. (b) 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials." (Italics added.)

It is readily apparent that the term "matter" as defined in subdivision (b) does not include the spoken word, and respondent so concedes. It is equally clear that the definition of obscenity in subdivision (a) refers only to certain types of "matter," as that term is defined in subdivision (b). We are, therefore, faced with the impossible task of applying a statute (§ 311.6) which refers to the speaking of "obscene . . . words" although the definition of the term "obscene"(in § 311) cannot include the spoken word.[10] The Legislature specified with great particularity in subdivision (b) of section 311 what it meant by the term "matter," and it is impermissible for us to either add to this definition or subtract from it. Thus the conclusion is inescapable under these circumstances that theatrical performances are not included within the prohibition of section 311.6.[11]

This conclusion is fortified by the fact that the Legislature deleted any reference to actors in 1961 when it amended section 311.6 during the course of revising the obscenity statutes. Although this omission might under other circumstances be deemed an equivocal act, perhaps indicating that the Legislature assumed that the specific mention of actors was not necessary because plays were otherwise covered by the prohibition against obscenity, such an explanation cannot be accepted here because in the same statute the Legislature defined the coverage of the obscenity laws with precision and did not include within such definition any word which could conceivably embrace plays.

Our holding here does not suggest that acts which are independently prohibited by law may be consummated without sanction on the stage merely because they occur during the course of a theatrical play. Dramatic license would not supply indulgence for the actual murder of the villain, the rape of the heroine, or the maiming of the hero. Neither do we intend to imply, however, that conduct or speech in a theatrical production is to be judged by the same standards as conduct or speech occurring on the street or other public place. *Giannini* makes it clear that "acts which are unlawful in a different context, circumstance, or place, may be depicted or incorporated in a stage or screen presentation and come within the protection of the First Amendment, losing that protection only if found to be obscene." (69 Cal.2d at p. 572.) We particularly reaffirm this portion

[10]This anomalous situation arose . because, when the Legislature revised the obscenity laws in 1961, it merely repeated the portion of section 311.6 prohibiting the speaking of obscene words, which had been in the section for many years, without taking into account the embracive definition of the term "obscene" in section 311 added the same year.

[11]Admittedly, it is difficult to conceive of a situation to which section 311.6 would be applicable since there is only one definition of the term "obscene" in the Penal Code and, as stated above, it cannot apply to the spoken word.

of the decision in *Giannini,* for any more restrictive rule could annihilate in a stroke much of the modern theater and cinema. The loss to culture and to First Amendment rights would be equally tragic.

We need not point out that the Legislature may prohibit the performance of an obscene play provided that constitutional standards are met in defining obscenity. (See *In re Giannini, supra,* 69 Cal.2d 563.) ■■■ We hold here only that the consequences of applying section 647, subdivision (a), to acts performed in a play, the language of section 311.6 when read in the light of the definition of obscenity, and the legislative history of both sections, all indicate that the Legislature did not intend those statutes to apply to theatrical performances.

The omission appears to be commonplace; according to a recent study, only five states enjoin obscene plays and four additional jurisdictions prohibit obscene performances or presentations. (See Note (1966) 75 Yale L.J. 1364, appendix II.)

In view of the conclusions reached above, it is not necessary to discuss other contentions raised by petitioners.

The order is reversed and the court is directed to issue the writ of prohibition as prayed for.

Traynor, C. J., Peters, J., and Tobriner, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the order denying a writ of prohibition, for the reasons expressed by Mr. Justice Cobey in the opinion prepared by him for the Court of Appeal, Second District, Division Three (*Barrows* v. *Municipal Court,* 2 Civ. 33328, filed May 2, 1969, certified for nonpublication).

**BURKE, J.**—I disagree with the majority that Penal Code section 647, subdivision (a), is inapplicable to live performances in a theater before an audience. The effect of that holding is to allow acts, however obscene, to be performed on the stage with complete immunity unless they are proscribed by other statutory provisions. It is inconceivable that the Legislature intended such a result. I also do not agree with the majority that Penal Code section 311.6 is inapplicable to such performances.

Petitioners Richard Bright and Alexandra Hay were charged with violating section 647, subdivision (a), and 311.6 for their conduct during performances of the play "The Beard." Petitioners Robert Barrows, the producer of the play, and Robert Gist, the director, were charged with aiding and abetting them in committing the violations. Respondent overruled demurrers to the complaints and denied a motion to dismiss. Petitioners

then sought prohibition in the superior court to restrain respondent from proceeding to trial. They appeal from the denial of the writ.

Penal Code section 647, subdivision (a), as it read at the time in question, provided that every person "Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" shall be guilty of disorderly conduct, a misdemeanor. Nothing in the language of the section excludes such conduct merely because it occurs during a theatrical performance before an audience.

It is implicit in *In re Giannini* (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], that the quoted subdivision may be applied to live theatrical performances, and *Dixon* v. *Municipal Court* (1968) 267 Cal.App.2d 789 [73 Cal.Rptr. 587] hear. den., held that the subdivision applied to a live performance in a theater of the very play at issue here. *Dixon* stated that the asserted lewd act was a simulation of oral copulation, which was done in the course of a performance of "The Beard." The court in *Dixon* specifically considered the requirement in Penal Code section 290 that persons convicted of violating section 647, subdivision (a), register as sex offenders, which requirement is relied upon by the majority in the instant case to support its conclusion that section 647, subdivision (a), is inapplicable to live theatrical performances. The court there (at p. 792) concluded and in my opinion properly so, that it was unnecessary to decide whether the applicability of section 290 could be challenged successfully by a performer if he were convicted of violating section 647, subdivision (a). That case, like the present one, was an appeal from an order disposing of a petition for a writ of prohibition to restrain the municipal court from prosecuting the petitioners.

*Dixon* further declared (at p. 792), "It cannot be reasonably believed that the Legislature intended to allow any and all acts which are patently obscene to be committed on stages, runways or other performing areas— but this would be the effect (except as to acts specifically made criminal under other statutes; for example, sodomy) of holding section 647, subdivision (a), inapplicable. It is more logical to withhold judgment on whether section 290 could apply to a theatrical performer than to hold all persons immune from obscene performances because registration may not be apposite to their cases."

In 1969 the Legislature amended section 647 but did not change the quoted language of subdivision (a). (Stats. 1969, ch. 204, § 1; ch. 1319, § 2.) Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed

that the Legislature is aware of the judicial construction and approves it. (*People* v. *Hallner,* 43 Cal.2d 715, 719 [277 P.2d 393].)

Penal Code section 311.6 provides: "Every person who knowingly sings or speaks any obscene song, ballad, or other words, in any public place is guilty of a misdemeanor." As the basis for its conclusion that the section is inapplicable to live performances before an audience, the majority point to the provision in section 311, as it read at the time in question, that "As used in this chapter [which includes § 311.6] . . . 'obscene' " has the definition there given, and the majority note that the definition there given employed the word "matter" and that the definition given for "matter" did not include the spoken word.[1] Therefore, state the majority (*ante,* p. 830) the court is "faced with the impossible task of applying a statute (§ 311.6) which refers to the speaking of 'obscene . . . words' although the definition of the term 'obscene' (in § 311) cannot include the spoken word."

The majority thus give no effect to section 311.6 and render it meaningless. This is contrary to the cardinal rule of statutory construction that a court must, where reasonably possible, harmonize statutes and construe them so as to give force and effect to all their provisions. (See, e.g., *Burks* v. *Poppy Constr. Co.,* 57 Cal.2d 463, 470 [20 Cal.Rptr. 609, 370 P.2d 313]; *Hough* v. *McCarthy,* 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276]; cf. *In re Bandmann,* 51 Cal.2d 388, 393 [333 P.2d 339].)

In the light of that rule and a recent amendment to section 311, which the majority fail to consider, it is clear that the intent of the Legislature in enacting section 311 was to define the term "obscene matter"[2] rather than the word "obscene" and that the word "obscene," as used in section 311.6, when reasonably interpreted, has a meaning similar to that accorded to it by the United States Supreme Court in *Roth* v. *United States,* 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], as elaborated in subsequent

---

[1]Section 311, as it read at the time in question, provided: "As used in this chapter:

"(a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.

"(b) 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.

" . . . . . . . . . . ."

The section was subsequently amended. (Stats. 1969, ch. 249, § 1.)

[2]The terms "obscene matter" and "matter represented . . . to be obscene" are employed in various sections in the chapter that contains section 311. (See Pen. Code. §§ 311.2, 311.5, and 311.7.)

cases.[3] The legislative intent regarding section 311 was clarified by the 1969 amendment thereto, which, among other things, added the word "matter" following the word "obscene." The section as it now reads, provides, "As used in this chapter: (a) 'Obscene *matter*' means . . . ." (Italics added.) Although a number of cases have indicated that section 311 defines the word "obscene" (see, e.g., *In re Panchot* (1968) 70 Cal.2d 105, 107 [73 Cal.Rptr. 689, 448 P.2d 385]; *In re Giannini, supra,* 69 Cal.2d 563, 571, fn. 4, 572-574; *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 911, 920 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707]; see *Dixon* v. *Municipal Court, supra,* 267 Cal.App.2d 789, 791), these cases preceded the 1969 amendment to section 311, which clarified the law.

That the Legislature intended section 311.6 to apply to theatrical performances is also indicated by the legislative history of the section. The section, which was added in 1961 as part of an overall revision of the obscenity laws, was derived from former section 311 of the Penal Code, which was repealed in 1961 (Stats. 1961, ch. 2147, § 1, p. 4427). Former section 311 was enacted in 1872, at which time the section prohibited the singing of a lewd or obscene song not only "in any public place" but also "in any place where there are persons present to be annoyed thereby." The prohibition referring to the spoken word was added in 1931 and a provision was inserted immunizing actors from prosecution under some but not all circumstances. (Stats. 1931, ch. 759, § 1, p. 1597.)[4] This provision remained in the section until the section was repealed in 1961. (See Stats. 1949, ch. 1003, § 1, p. 1848; Stats. 1952, First Ex. Sess., ch. 23, § 4,

---

[3]The United States Supreme Court "defined obscenity in *Roth* in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S., at 489. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." (*Memoirs of a Woman of Pleasure* v. *Attorney General,* 383 U.S. 413, 418 [16 L.Ed.2d 1, 5, 86 S.Ct. 975].) "Obscene," as used in section 311.6, reasonably interpreted, has the foregoing meaning except that the words "live performance" should be substituted for the word "material."

[4]The provision read: "The provision of [the subdivision prohibiting the singing or speaking of obscene songs or words under specified circumstances] shall not apply to any person participating in violation thereof only as an actor, unless and until the proper court shall have passed upon the matter and found the actor to have violated the said subdivision . . ., except where after a complaint has been filed against the owner, manager, producer or director charging a violation of said subdivision . . ., and pending the determination thereof an actor or actress utters the particular word or words complained against or other word or words of the same or similar import, in connection with such performance, act, play, drama, exhibition or entertainment." (Stats. 1931, ch. 759, § 1, p. 1597.)

p. 381.) The Legislature thus manifestly contemplated that former section 311 applied to actors under some circumstances, and nothing in the 1961 revision of the obscenity laws indicates a legislative intent to grant actors immunity from prosecution under section 311.6.[5] Rather the failure to include in section 311.6 the provision relating to actors indicates a legislative intent not to immunize from prosecution under any circumstances persons on the ground that they are actors. (See, generally, Baum, *California's New Law on Obscene Matter,* 36 State Bar J. 625, 632-633.)

I would affirm the order denying the writ of prohibition.

McComb, J., and Sullivan, J., concurred.

The petition of the real party in interest and respondent for a rehearing was denied February 25, 1970. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

[5]That the phrase "or in any place where there are persons present to be annoyed thereby" was omitted from section 311.6 does not show a legislative intent to exclude conduct that occurs in a theater, since the prohibitions of that section apply where the conduct occurs "in any public place" and a theater clearly appears to be such a place.