SACK, MARTIN, Associate Judge.
This is an appeal by the State of Florida from an order dismissing an indictment and information.
The facts and reasoning of the trial court are fully set forth in the order appealed from:
“That on the 19th day of November, 1970, the Defendants were charged with violating various provisions of the City of Miami Beach Code of Ordinances. The Defendants, NANCY CHERYL FREEMAN, NORMAN PAUL MEARES, HUGH WASHINGTON WILLIAMS, JR., KAREN DE VRIES, CAROLE ANN HOLLENBECK, JOHN COPELAND, MARC BROCK, and LEROY GRIFFITH, were charged with violating Section 25-53 (a) (3) (2) of the Code of the City of Miami Beach, which reads as follows:
‘Knowing the content and character of the performance which was presented, he (she) produced, presented, directed or participated in an obscene performance or a portion thereof which is obscene or which contributed to its obscenity.’
The Defendants, KAREN DE VRIES, HUGH WASHINGTON WILLIAMS, JR., NANCY FREEMAN, CAROLE ANN HOLLENBECK, and NORMAN PAUL MEARES were charged with violating Section 25-52 of the Code of the City of Miami. Beach, which reads as follows:
‘Was found in a state of nudity in a public place in the city and made indecent exposure of his or (her) person and was guilty of indecent or lewd behavior.’
Additionally, the defendant, LEROY GRIFFITH was charged with violating Section 25-48 of the Code of the City of Miami Beach, which reads as follows:
‘Keeping a house of ill fame in the city resorted to for the purpose of lewdness.’
*544 All of these above charges arose as a result of the Defendants performance at the Roxy Theatre in the City of Miami Beach of the play known as FEAR OF LOVE. The date of the alleged violation for which all of the above Defendants were prosecuted in the City of Miami Beach was the performance of October 5, 1970.
Subsequently, on October 14, 1970, the Defendants were indicted by the Grand Jury for violating the Florida Statutes. Defendants NANCY FREEMAN, NORMAN PAUL MEARES, HUGH WASHINGTON WILLIAMS, JR., KAREN DE VRIES, CAROLE ANN HOLLENBECK, JOHN COPELAND, and MARC BROCK a/k/a BARRY BENNETT, were charged with lewd and lascivious behavior in violation of Section 798 of the Florida Statutes. Defendants, NANCY FREEMAN, NORMAN PAUL MEARES, HUGH WASHINGTON WILLIAMS, JR., KAREN DE VRIES, CAROLE ANN HOLLENBECK, JOHN COPELAND, and MARC BROCK a/k/a BARRY BENNETT were also charged with indecent exposure in violation of Section 800.03 of the Florida Statutes. Defendants ELL-GEE, INC., and LEROY GRIFFITH were charged with operating a building for lewdness in violation of Section 796.07(2) (a) of the Florida Statutes. On December 8, 1970, an Information was filed based on the foregoing Indictment charging all of the above Defendants with all of the aforementioned violations of State law. Both the Indictment and Information charged that all of the alleged violations under State law occured during the performance of a play, FEAR OF LOVE on the 7th day of September, 1970.
It is the opinion of this Court that the Defendants may not be tried on this Indictment and Information. Such a trial would violate the Defendants rights under the Fifth Amendment of the Constitution of the United States as interpreted by the Supreme Court of the United States in Waller v. Florida, [397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435] 7 CrL 3017 (Dec. April 6, 1970), and Ashe v. Swenson [397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469] 7 CrL 3030 (Dec. April 6, 1970).
This Court holds that a live play, performed in a theatre before an audience is entitled to the same protection under the First Amendment as motion pictures. Barrows v. Municipal Court of Los Angeles Jud. Dist., 1 Cal.3d 821, 83 Cal.Rptr. 819, 464 P.2d 483 (Sup.Ct. of California, En banc, 1970). Each performance of a play is in the opinion of this Court not a separate violation but rather, if in fact a play constitutes a violation of law, each performance constitutes a continuing violation of law.
All of the Defendants herein were tried in Municipal Court for essentially similar violations arising out of a performance of the play, FEAR OF LOVE, on October 5, 1970. It is inconceivable that the sovereigns of the State of Florida, and the City of Miami Beach could alternatively charge these Defendants with violations of law from the day the play started through October 5, 1970. Had the State chosen to indict for a performance that occured after October 5th, this Court’s ruling would be different. However, it is the opinion of this Court that for the aforementioned reasons, the State cannot prosecute these Defendants for a performance of the play that occurred on September 7, 1970, a date preceding the date on which they have already been tried and convicted in the City of Miami Beach Municipal Court.
IT IS THEREFORE, upon consideration ordered that the Indictment and Information filed herein be and is the same hereby dismissed.”
We disagree with the lower court and reverse for the reasons hereinafter set forth.
The Waller case is not applicable since the prosecutions in the Municipal Court *545 were for the performance of a play on October 5, while the instant State information concerned a performance of the play on September 7.
The lower court’s reliance on Barrows v. Municipal Court of Los Angeles Judicial District is misplaced, since the Supreme Court of Florida in Hoffman v. Carson, 250 So.2d 891, has held contrary to the basic premise of Barrows. The latter case was bottomed on the premise that live plays performed in any threatre before an audience are entitled to protection under the First Amendment, without qualification as to its lewd or obscene contents. Our Supreme Court, in Hoffman, has held that this is not so, and refused to follow the reasoning of the Supreme Court of California, In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968), cert. denied, 395 U.S. 910, 89 S.Ct. 1743, 23 L.Ed.2d 223, upon which Barrows was predicated. Instead our Supreme Court held:
“This assertion might be applicable in other circumstances, but we find that in relation to the performance as presented, it is without merit. Appellant loses sight of the distinction between speech and conduct. The statute is not directed at First Amendment rights of free expression, nor does it concern itself with obscenity as does Fla.Stat. Chapter 847, F.S.A. Rather, it is directed at the exposure of sexual organs and nudity, a matter of conduct thought to be a crime under the common law [e. g. Commonwealth v. Broadland, 315 Mass. 20, 51 N.E.2d 961 (1943); Noblett v. Commonwealth, 194 Va. 241, 72 S.E.2d 241 (1952)], and generally considered as having a reasonable relationship to the public welfare, and, therefore, within the police power of the Legislature.”
Thus, we are not considering a First Amendment situation, nor a Waller prohibition. Essentially, appellees’ reliance is upon its argument that the performance of a play, even though in violation of the several lewdness and obscenity statutes and ordinances, is a continuing performance throughout its run and therefore constitutes but a single episode or transaction within the meaning of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and consequently the conviction in the Municipal Court of Miami Beach foreclosed any prosecution for an earlier performance of the same play, under the Double Jeopardy Clause, of the Fifth Amendment, or under the Doctrine of Collateral Estoppel. Thus, we are not concerned with the prosecution by either the State or the City for a performance after the performance of Ocober 5, but only the effect of such prosecution for earlier performances.
No cases have been cited, nor have we found any, defining the separate performances of the play as constituting a continuous or single episode or transaction; and Ashe v. Swenson offers no assistance. In that case the defendant was charged with being one of the robbers who engaged in the robbery of six poker players in one incident. As stated in the majority opinion by Mr. Justice Stewart:
“The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again.”
But that is very different from the situation presented here. Each performance of the play constituted a separate incident, transaction or episode even though the same words were spoken and the same exposure indulged in. We equate this activity with that of a bookmaker taking separate bets on separate days on any gambling activity, or a prostitute plying her activities day after day, or separate acts of incest committed with the same victim on separate days, or the uttering of a continu *546 ous series of forgeries on the same person’s account in the same bank, or the shooting of a number of persons with the same gun during a single demonstration or uprising.
Here, each performance of the play presumably was before a different audience, so that the lewd and lascivious conduct or obscenity was portrayed at different times before different persons. The fact that the same words were used and the same lascivious conduct was indulged in does not convert the separate activities into a continuous transaction or continuing activity.
Accordingly, the judgment below is reversed, and the order of dismissal is vacated and set aside as to Counts I and II of the indictment, and as to Counts I and II of the information. The State concedes double jeopardy as to the defendant, Leroy Griffith, under Count III of the information, and the order of dismissal is affirmed as to this Count, while appellees concede there was no double jeopardy as to Ell-Gee, Inc., so that the trial court’s dismissal of this Count as to this defendant is reversed.