[Civ. No. 2635. Fifth Dist. Jan. 20, 1976.]

FORREST LEFFEL, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE FRESNO COUNTY
JUDICIAL DISTRICT OF FRESNO COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Donald H. Hazel for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Nancy Sweet, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

FRANSON, J.—This case presents a question of first impression: Does Penal Code section 647, subdivision (b), which defines "disorderly conduct" as including "[e]very person . . . [w]ho solicits . . . any act of prostitution," apply to a "customer" of a prostitute, or is the statute limited in its application to solicitation by the prostitute?

### STATEMENT OF THE CASE

Appellant was arrested and charged with disorderly conduct in violation of Penal Code section 647, subdivision (b). At the arraignment he demurred to the complaint on the grounds, among others, that the facts alleged failed to state a public offense and that the court had no jurisdiction because the complaint violated his right to due process. Appellant also moved to dismiss the charge.

At the hearing on the demurrer, it was agreed between appellant and the district attorney that appellant was not a prostitute and had not engaged in an act of prostitution.

The municipal court overruled the demurrer and denied the motion to dismiss.

Appellant then filed a petition for writ of prohibition in the Fresno County Superior Court asking that court to restrain the municipal court from taking any further action in the case other than to order a dismissal of the action. The superior court issued an alternative writ and ordered the municipal court to show cause why it should not be restrained from taking further action in the case. After a hearing on the petition the superior court denied a peremptory writ because "it takes two to tango." Appellant timely filed a notice of appeal.

### INTERPRETATION OF STATUTE

Penal Code section 647 provides in part:

"*Every person* who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor:

"...    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(b) Who solicits or who engages in any act of prostitution. As used in this subdivision, 'prostitution' includes any lewd act between persons for money or other consideration." (Italics added.)

While quantitatively the words, "every person," would include the customer as well as the prostitute, male or female, appellant nonetheless contends that by reason of the legislative history of section 647 and prior judicial interpretation of the meaning of the words, "soliciting for prostitution," the statute applies only to solicitation by a prostitute and not by a customer.

As a general rule courts are precluded from interpreting a statute unless the statutory language is uncertain or there is doubt regarding the legislative intent. (*County of Sacramento* v. *Superior Court* (1974) 42 Cal.App.3d 135, 139 [116 Cal.Rptr. 602]; *Caminetti* v. *Pac. Mutual L.Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908]; 45 Cal.Jur.2d, Statutes, § 108, p. 621.) However, ambiguity is not always a necessary condition precedent to judicial interpretation in that " '[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' " (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593]; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

Appellant relies on *Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821 [83 Cal.Rptr. 819, 464 P.2d 483] to support his contention that the words, "every person," in the disorderly conduct statute may be restricted qualitatively by judicial interpretation. *Barrows* involved in part the applicability of section 647, subdivision (a) (lewd or dissolute conduct in a public place), to the live performance of a play in a theater before an audience. The Supreme Court concluded that regardless of the words, "every person," the Legislature did not intend the statute to apply to First Amendment activities such as theatrical performances. (1 Cal.3d at pp. 826, 828.) While, understandably, appellant does not contend that soliciting a prostitute is a constitutionally protected activity, he argues from *Barrows* that this court must examine the legislative history of section 647 to ascertain whether the customer was intended to be included therein.

Assuming a degree of uncertainty in the language, "every person," we are not helped by the legislative history of the statute. Section 647, subdivision (b), was revised in 1961 primarily because then section 647, subdivision (10), which declared every "common prostitute" to be a vagrant, punished status rather than acts and because of its probable unconstitutional vagueness. (See Sherry, *Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision* (1960) 48 Cal.L.Rev. 557, 563-564, 566-567, 570; see also *In re Newbern* (1960) 53 Cal.2d 786, 797 [3 Cal.Rptr. 364, 350 P.2d 116].) The revision proposed by Professor Sherry and ultim. ·† ly adopted by the Legislature was based on Assembly Bill No. 2712 ,. �situation. This proposed bill provided that it was a misdemeanor if any person ' . . . for pecuniary profit, solicits or engages in any act of prostitution." Professor Sherry's suggested revision deleted the phrase, "for pecuniary profit," as redundant. (Sherry, 48 Cal.L.Rev. at p. 570.) The legislative committee that approved his revision quoted his comments and expressed its full concurrence. (Assem. Interim Com. Rep. Criminal Procedure 2 Appendix to Assem. J. (1961 Reg. Sess.) pp. 12-13.) Appellant argues that because customers do not realize the pecuniary profit from an act of prostitution the Legislature did not intend to include them within the scope of section 647, subdivision (b). Although the term "prostitution" connotes commercial sexual conduct, the deletion of, "for pecuniary profit," does not ipso facto exclude customers from the scope of the statute. It reasonably can be argued that by use of the term, "prostitution," the Legislature intended only to prohibit commercial sexual acts rather than "free love." This being so, it follows that the words, "for pecuniary profit," were deleted simply because they were unnecessary to the legislative purpose. Thus, the legislative history to section 647, subdivision (b), contains no clear expression of its intended scope insofar as the customer is concerned.

Appellant cites the 1971 draft of the Criminal Code prepared by the staff of the Penal Code Revision Project for the Joint Legislative Committee which suggests that section 647, subdivision (b), does not include the customer within its ambit. Respondent rebuts by citing the 1968 committee draft which suggests that the customer is included within the statute. While committee reports proposing subsequently adopted statutes are entitled to substantial weight in construing a statute (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 630 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420], *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508]), reports made after a statute is enacted are entitled to little weight. The conflicting "ex post facto"

expressions of opinion evidenced by the 1968 and 1971 reports merely reflect committee confusion as to the meaning of the statute.

Appellant cites *In re Carey* (1922) 57 Cal.App. 297 [207 P. 271] for the proposition that as a matter of law only a prostitute can solicit an act of prostitution. In *Carey,* a woman convicted of violating a city ordinance making it unlawful for any person to solicit for the purpose of prostitution challenged her sentence on the ground that the state statute under which she was sentenced was discriminatory in that it applied only to women. In language which in part would be considered anachronistic by today's standards, the court said:

"It is true that the statute provides that every woman carrying on the business of prostitution may be committed to the farm; but the statute would have meant exactly the same had it in terms applied to every person. The fact that the fallen woman carries on the business of commercialized vice justifies whatever discriminations may be found in the statute. The act of her partner in vice, while equally as nefarious, is neither commercialized nor continuous. It is proper enough to send him to jail for his offense, but it is doubtful if the scheme of impounding him for purposes of reformation would commend itself to the lawgiver. The conditions surrounding the two classes of offenders are so unlike that different methods of treatment are fully justified.

". . . . . . . . . . . . . . . . . .

"The specific charge against the petitioner is . . . that . . . of . . . soliciting for prostitution . . . . The ordinance, it is true, applies to 'every person.' . . . But a man can no more commit the offense of soliciting for prostitution than that of carrying on the business of prostitution. . . . The words 'soliciting for prostitution' have a well understood and distinct meaning. They are held to mean the act of a fallen woman in hailing passers-by and soliciting them to patronize her business." (57 Cal.App. at pp. 306-307.)

*Carey* is not persuasive authority in the present case for several reasons. First, the issue in *Carey* was not whether the customer was punishable under the ordinance, but whether the state act prescribing the punishment was discriminatory since it applied only to women. (57 Cal.App. at p. 304.) The court merely decided that different methods of treatment were fully justified depending on whether it was the customer or the prostitute who violated the law. (57 Cal.App. at pp. 306-307.)

Thus, the language to the effect that "soliciting for prostitution" can only mean the act of the female prostitute in soliciting patrons for her business is dictum and not binding as precedent. (*People* v. *Handley* (1970) 11 Cal.App.3d 277, 282 [89 Cal.Rptr. 656].) Moreover, *Carey* recognized that the customer's act was a crime although not subject to punishment under the challenged ordinance.

Second, the language in *Carey* indicates that the ordinance was designed to punish the female prostitute solely because of her status as a prostitute rather than for a specific act of prostitution. (57 Cal.App. at pp. 304-306.) Penal Code section 647, subdivision (b), is clearly designed to punish specific acts without reference to the status or sex of the perpetrator.

Third, because of the preemption by state law in the area of criminal sexual activities (*Spitcauer* v. *County of Los Angeles* (1964) 227 Cal.App.2d 376, 378-379 [38 Cal.Rptr. 710]), section 647, subdivision (b), should be interpreted by reference to its own language and not on the basis of a half-century-old judicial interpretation of a local ordinance. Nothing in the history of section 647, subdivision (b), suggests that the Legislature had the *In re Carey* definition of solicitation in mind when it revised the statute in 1961.

Because of the absence of extrinsic interpretive aids, we must return to the language of the statute to ascertain the legislative intent. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500].) ▮ The words, "every person . . . who solicits . . . any act of prostitution," are clear and unambiguous. "Every," means "each and all within the range of contemplated possibilities." (Webster's New Internat. Dict. (3d ed. 1961) Unabridged, p. 788.) "Solicit," means, "to . . . entreat or importune . . . : to approach with a request or plea." (*Supra*, at p. 2169.) "Prostitution," means, "the act or practice of indulging in promiscuous sexual relations esp. for payment." (*Supra*, at p. 1822.) Thus, the ordinary meaning of the statute is that *all persons*, customers as well as prostitutes, who solicit an act of prostitution are guilty of disorderly conduct.

Furthermore, this interpretation is consistent with the legislative purpose and policy behind the statute. (See Pen. Code, § 4; *Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463]; *People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 478 [93 Cal.Rptr.

132].)  ■  The legislative purpose in proscribing solicitation for prostitution is to eliminate prostitution and its attendant evils. Subjecting the customer to prosecution will further the legislative purpose—probably more so than any other legislative remedy.

We construe the statute to apply to the customer as well as the prostitute.

### No Denial of Due Process

Appellant contends that if the statute is judicially interpreted to include a customer who solicits an act of prostitution his prosecution under the statute would work a denial of due process because he had no fair warning that his act was a crime.

*Keeler* v. *Superior Court, supra,* 2 Cal.3d 619, articulates the applicable principles:

"The first essential of due process is fair warning of the act which is made punishable as a crime. 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law.' [Citation.] 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' [Citation.] The law of California is in full accord. [Citations.]

"This requirement of fair warning is reflected in the constitutional prohibition against the enactment of ex post facto laws [citation]. When a new penal statute is applied retrospectively to make punishable an act which was not criminal at the time it was performed, the defendant has been given no advance notice consistent with due process. And precisely the same effect occurs when such an act is made punishable under a preexisting statute but by means of an unforeseeable *judicial* enlargement thereof. [Citation.]" (2 Cal.3d at pp. 633-634.)

■  Because section 647, subdivision (b), includes "every person" who solicits an act of prostitution, the statute itself gives fair notice that customers are included. Moreover, our interpretation of the statute to include a customer within its ambit was reasonably foreseeable.

In *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 473-474 [106 Cal.Rptr. 519] (hg. den. Apr. 4, 1973, cert. den., 414 U.S. 855 [38 L.Ed.2d 104, 94 S.Ct. 155]), the question was whether the judicial interpretation of Penal Code section 487 to make a partner guilty of grand theft when he steals from the partnership resulted in an ex post facto application to the defendant by making criminal an act innocent when done. (30 Cal.App.3d at p. 472.) In holding that the defendant had fair notice under the statute and that the judicial interpretation holding a partner guilty of grand theft when he steals from the partnership was not unforeseeable, the court quoted from *United States* v. *Rundle* (E.D.Pa. 1966) 255 F.Supp. 936, affd. in (3d Cir. 1967) 383 F.2d 421, cert. den., 393 U.S. 863 [21 L.Ed.2d 131, 89 S.Ct. 144], as follows: " 'This is not a case where an act clearly not criminal at the time of its occurrence, is so declared to be at some subsequent time. Nor is it a case where criminal responsibility should not attach because the actor could not reasonably understand that his contemplated conduct was proscribed.' . . . 'It is not always true that where the definition of a crime is extended by judicial construction, a conviction which results therefrom is a denial of due process' . . ., '. . . the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. . . . *The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct."* ' " (30 Cal.App.3d at pp. 474-475.) (Italics added.)

*Sobiek* distinguished *Keeler* v. *Superior Court, supra,* 2 Cal.3d 619 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]. *Keeler* had held that the killing of a viable fetus did not violate section 187 of the Penal Code which defines murder as "the unlawful killing of a human being" because the Legislature clearly intended by section 187 to restrict the crime of murder to the killing of one who had been born alive. (2 Cal.3d at pp. 628-629.) *Sobiek* noted that under the facts of *Keeler,* prior to the killing, the defendant had no notice from any source that destroying a viable fetus might be murder, whereas, under the grand theft statute, section 487, "there is no indication that the Legislature did not intend to include in 'property of another' the property of partners other than the one stealing such property, or of the partnership itself." (30 Cal.App.3d at p. 475.)

In the present case, appellant must have realized that his conduct was not entirely innocent. He presumably was aware that prostitution was

illegal and that his actions with the prostitute could result in her prosecution. Any past reluctance on the part of public authorities to arrest and prosecute the customer cannot rescue appellant from his presumed knowledge that what he was doing was wrong; hence, our interpretation that customers are within the ambit of section 647, subdivision (b), was foreseeable.

The order denying the petition for writ of prohibition is affirmed.

Gargano, Acting P. J., and Thompson, J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.