[No. B003787. Second Dist., Div. Four. June 25, 1984.]

NORTH HOLLYWOOD MARBLE CO., INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GLOBE MARBLE AND TILE, INC., Real Party in Interest.

684

**COUNSEL**

Louis A. Stearns, Blanchard, Wire & Levine and R. Thomas Wire for Petitioner.

No appearance for Respondent.

Buzard, Larson & McIntyre and Gregory L. Larson for Real Party in Interest.

## OPINION

**WOODS, P. J.**—This proceeding in mandate presents a question of statutory construction as to whether section 489.220 of the Code of Civil Procedure allows or forbids a trial court, hearing a defendant's motion to increase the amount of an attachment undertaking, to consider the probability that the plaintiff will not prevail in the action. Specifically, the question is whether the term "probable recovery for wrongful attachment" is intended to mean: (1) the total damages defendant will probably sustain presuming that the attachment issued on a meritless action or (2) that the trial court has discretion to consider the probability that the plaintiff will prevail in the action and to adjust the amount of the total expected damages to defendant according to that probability factor.

The facts are not in material dispute.

Plaintiff, Globe Marble and Tile, Inc., sues defendant, North Hollywood Marble Co., Inc., for breach of contract, account stated, and open book account for $272,938 allegedly owed by defendant for marble and granite supplies defendant ordered and received from plaintiff on an intermittent basis. Defendant filed an answer to the verified complaint denying that a balance due exists in the amount alleged or that it breached any obligation to plaintiff.

In January 1984, plaintiff obtained a right to attach order directing the marshall to seize from defendant's place of business—which produces marble fixtures such as statues and fireplaces—"any and all inventory, equipment, materials, supplies" to the value of plaintiff's $272,938 claim. Plaintiff gave an undertaking in the amount of $7,500, which is the initial undertaking required under section 489.220, subdivision (a) of the Code of Civil Procedure.[1]

Thereafter, defendant filed an application to allow substitution of two personal sureties (the president of defendant and his brother) in lieu of the property subject to attachment[2] and an application to increase the amount of plaintiff's undertaking pursuant to section 489.220, subdivision (b).

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The former application was based upon declarations and financial statements to the effect that defendant's gross income and assets were sufficient to provide alternative security to the ordered attachment. Defendant's showing on this application and the plaintiff's opposition thereto indicated that defendant was not financially able to provide satisfactory alternative security and respondent denied that application. Defendant does not now challenge the correctness of this ruling and we need not discuss it further here.

In support of its application to increase plaintiff's undertaking, defendant submitted declarations and financial summaries claiming that it has substantial assets and generates an average monthly gross income of $1 million; has an inventory of raw marble worth approximately $1.2 million; has finished work and work in progress valued at over $3 million; and has tools worth not less than $136,145. Defendant avers that it depends upon the particular marble inventory, finished work and work in progress, and tools described in the writ of attachment to continue its daily business. The director of engineering and operations of defendant states his opinion that if "these tools" or "the finished work and the work in progress were all attached, then the company would have to immediately cease its business." Defendant's president places the business value of defendant at $15 million, which he says will be totally lost if attachment levies. A licensed real estate broker echoed this $15 million valuation and also the conclusion that if all tools and materials were attached the defendant would have to cease business. The claims as to the devastating effect of a levy upon defendant's inventory, materials, and tools is thus a conclusion based upon the unjustified assumption that plaintiff will not merely levy upon $272,000 worth of marble materials sufficient to satisfy the attachment, but will levy excessively upon all defendant has.

Defendant contends that every application for increase under subdivision (b) of section 489.220, requires the trial court to increase the plaintiff's undertaking to the amount of the maximum damages that could be expected to occur to defendant assuming that the attachment later proves to have been wrongful.

In opposition to defendant's motion, plaintiff submitted the declaration of the "Data Processing Manager of defendant, Mike White." This declaration had been submitted by defendant in opposition to the plaintiff's prior successful motion for a right to attach order. Plaintiff pointed out that the White declaration in effect concedes that defendant has no cancelled checks or other documentation demonstrating or even suggesting that defendant has paid more than $26,762.49 on the $272,000 obligation claimed by plaintiff. The White declaration asserts that plaintiff's present claim of $272,938.20 includes five invoices totaling $12,547.63 which were never presented to defendant for payment. The declaration does not deny that defendant owes plaintiff a balance of $227,554.80 (the balance of the plaintiff's invoices for which defendant has no documentation of payment) but rather states that Mr. White "is unable to determine if [defendant] owes $272,938.20 or any other amount to Globe Marble, because they have improperly applied funds paid by [defendant] to the account."

Plaintiff also pointed out that defendant's claim of expected financial ruin by attachment is based upon the assumption that assets will be excessively

levied upon beyond the $272,938 value authorized by the writ of attachment, or that plaintiff will maliciously attach all of defendant's tools. Plaintiff contends that section 489.220, subdivision (b), allows the trial court discretion to consider the probable validity of plaintiff's claim in determining the "probable recovery" by defendant for "wrongful attachment."

After hearing, respondent denied defendant's motion. It found that plaintiff's claim was almost certainly meritorious as to at least $227,554.80 for which defendant could not show payment. Respondent viewed the White declaration as a virtual concession of indebtedness, although the declaration is evasively and equivocally worded so as to avoid a direct concession and to perpetuate the appearance of triable issues of fact. Respondent ruled that section 489.220, subdivision (b), contemplates the trial court's consideration of the probable validity of the plaintiff's claim in the process of determining the "probable recovery" of defendant for "wrongful attachment." It also rejected defendant's efforts to base predicted total financial collapse upon the assumption that the attachment would be excessive and include all defendant's materials, work in progress, and tools in excess of the $272,938 attachment amount.

Defendant filed its petition with this court and we issued the alternative writ to determine the important issue of statutory construction presented.

I

*Section 489.220, subdivision (b).*

Section 489.220, subdivision (b), which became effective January 1, 1977, with an overall revision of the Attachment Law (§ 481.010 et seq.) provides for increasing the $7,500 undertaking that is automatically set by subdivision (a) of section 489.220 for the initial undertaking on attachment in all superior court actions.

Subdivision (b) provides: "If, upon objection to the undertaking, the court determines that the probable recovery for wrongful attachment exceeds the amount of the undertaking, it shall order the amount of the undertaking increased to the amount it determines to be the probable recovery for wrongful attachment if it is ultimately determined that the attachment was wrongful."

As is suggested in the foregoing statement of facts, there is ambiguity and uncertainty as to precisely what the Legislature intends a trial court to consider in determining "probable recovery for wrongful attachment." What may be termed a literal reading of subdivision (b) suggests that the court is

to assume that the attachment is wrongful when determining defendant's "probable recovery" and thus increase the undertaking amount to the total damages defendant competently demonstrates it is likely to sustain from the attachment. This reading, in effect, equates "probable recovery" with "probable loss." But if the statute is to be construed literally, then the first portion of subdivision (b) does not require such presumption of wrongfulness when determining whether the initial undertaking is inadequate.

The alternative construction is that the term "probable recovery" is intended to mean something different than "probable loss" and to give the trial court discretion to consider, as a second and interrelated factor, the probability that plaintiff will prevail on his claim in the action. Under this construction, a showing of great probable loss to defendant could be adjusted by the probability factor attributed to the plaintiff's chances of prevailing in the action. If plaintiff's chances are only marginally over the "more-likely-than-not" probability, then the undertaking should be virtually the full amount of probable loss to defendant. This construction sees the Legislature as crediting trial courts with the capacity to evaluate evidence on a case-by-case basis and thus fashion an undertaking that will indemnify defendants for damages to the extent such damages are actually demonstrated to be probable.

While the construction urged by defendant is admittedly permissible under the language of the statute, we are persuaded that the consequences of that construction would work contrary to the purpose of the remedy of attachment and would require absurd results by preventing courts from considering evidence material to the issue of probable recovery.

■   The fundamental rule of statutory construction is that a court should attempt to ascertain the intent of the Legislature so as to effectuate the purpose of the statute as a whole. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749].) Ordinarily, every word and phrase in the statute should be presumed to be intended to have meaning and a useful function. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].) Where a statute is uncertain or ambiguous on its face, judicial construction is appropriate. (*Copeland* v. *Raub* (1940) 36 Cal.App.2d 441 [97 P.2d 859]; *San Francisco* v. *San Mateo* (1941) 17 Cal.2d 814, 817 [112 P.2d 595].) Where a literal reading of a statute appears to nullify the general purpose of a statute or statutory scheme and to come into conflict with the legislative purpose otherwise apparent, a construction giving reasonable effect to the statute is preferred if the language thereof is reasonably susceptible to the alternative construction. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 606-607 [130 Cal.Rptr. 110].) A

literal construction that will lead to absurd consequences or injustice should not be given if it can reasonably be avoided. (*Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569 [126 Cal.Rptr. 773]; *Carpy* v. *Dowdell* (1900) 129 Cal. 244, 246 [61 P. 1126]; *Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 418 [128 Cal.Rptr. 572]; *Leo* v. *Board of Medical Examiners* (1940) 36 Cal.App.2d 490, 493 [97 P.2d 1046]; *Dempsy* v. *Market Street Ry Co.* (1943) 23 Cal.2d 110, 113 [142 P.2d 929]; *Henreid* v. *Superior Court* (1976) 59 Cal.App.3d 552, 558 [130 Cal.Rptr. 892].)

▮ The primary purpose of the remedy of attachment is to allow unsecured creditors a procedure ancillary to their action by which to ensure that the alleged debtor's assets are not dissipated prior to the time the creditor can obtain and enforce the anticipated judgment on his claim. (*National General Corp.* v. *Dutch Inns of America, Inc.* (1971) 15 Cal.App.3d 490, 495-496 [93 Cal.Rptr. 343]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 555 [96 Cal.Rptr. 709, 488 P.2d 13].)

In order to maximize the utility of attachment as a remedy, the interest of the plaintiff creditor in obtaining prejudgment security must be facilitated while at the same time the interest of the defendant in avoiding potential adverse financial consequences must be considered. Accordingly, before the writ of attachment may issue, the plaintiff is required to give a sufficient undertaking, usually accomplished by payment of the premium for a corporate surety bond. The defendant is interested in requiring an undertaking in an amount sufficient to indemnify it for damages likely to result from the levy of attachment in the event the attachment ultimately proves to have been "wrongful."[3] It is the optimal function of the remedy of attachment to provide the plaintiff with security up to the amount of his claim at a cost that does not render the remedy prohibitive while still affording to the defendant an undertaking in an amount that will adequately satisfy his damages for wrongful attachment.

▮ However, under the construction urged by defendant, a plaintiff seeking attachment on a claim of certain merit must nevertheless finance a massive undertaking whenever the defendant can demonstrate that it is in such a precarious financial condition that a lawful attachment would result in probable damage or destruction of its entire business. Thus, in the situation where the remedy of attachment is most needed to protect the plaintiff from dissipation of the assets of a financially distressed defendant, the remedy would prove too costly to obtain or too costly to be of advantage. Businesses doing a high volume of sales could be relegated to paying a large

---

[3] Section 490.010 defines "wrongful attachment" as, inter alia, when the attachment levy occurs in an action where the plaintiff does not recover judgment.

portion of their operating expenses or otherwise encumbering a large part of their operating assets simply to guard against the uncollectability of moderate judgments against financially distressed defaulting purchasers.

The absurdity of the trial court being precluded by statutory mandate from considering a material factor that has been demonstrated by clear and convincing evidence—here is underscored where, as appears to be the situation, the plaintiff's claim has essentially been conceded and plaintiff seeks only to secure from dissipation the very materials it sold to defendant.

■ Defendant points out that section 484.100 provides that a court's "determinations" with regard to a motion for right to attach order and for a writ of attachment (controlled by chapter 4 of the Attachment Law, §§ 484.010 through 485.510) "shall have no effect on the determination of any issues in the action other than issues relevant to proceedings under [chapter 4] . . . ." From this it concludes that the Legislature intended to preclude any consideration of the probable validity of the plaintiff's claim in determining a motion to increase the undertaking.

But it is pointed out in the Law Revision Commission comment (1974) to section 484.100 that "Section 484.100 does not, however, make inadmissible any affidavit filed under this chapter." (15A West's Annot. Code Civ. Proc., pp. 120-121.) Accordingly, the restriction imposed by section 484.100 cannot be read as any indication that the trial court is not to evaluate the probable validity of plaintiff's claim as a factor in determining a motion to increase undertaking. Additionally, section 484.100, as well as the Law Revision Commission comment thereto, suggests that the primary intent is to preclude the initial determinations made in connection with issuance of attachment from being adopted in determination of issues in the principal action.

■ In contrast, the construction of section 489.220, subdivision (b) adopted here allows trial courts to exercise their discretion to consider evidence as to all material factors when balancing the competing interests of plaintiff and defendant in arriving at an undertaking amount tailored to the particular action. Trial courts have long been acknowledged by case law as being vested with such sound discretion. (*Francis* v. *Superior Court* (1922) 58 Cal.App. 618, 622 [209 P. 80]; *Greene* v. *Superior Court* (1933) 133 Cal.App. 35, 37-39 [23 P.2d 785]; *Murillo* v. *Toole* (1941) 47 Cal.App.2d 725, 727-728 [118 P.2d 895].) These cases acknowledge that trial courts have inherent jurisdiction apart from statutory authority to increase the amount of an undertaking on attachment if, in the court's discretion, such increase is appropriate. The ambiguous language of section 489.220, subdivision (b), does not reflect a clear legislative intent to divest trial courts

of such inherent discretion and to preclude the consideration of facts that are critical to achievement of the purpose of attachment.

While it can be argued that defendant's reading of subdivision (b) reflects a dramatic shift in the legislative concern to that of protecting businesses from the effect of financially crippling wrongful attachments, there is simply no clear indication the Legislature intended a formula that would frustrate the financial utility of attachment in situations where the evidence before the trial court demonstrates the threat of wrongful attachment is slight. Neither is there an indication that the Legislature has lost confidence in the ability of courts to evaluate material evidence and balance between vital competing needs. Had the Legislature desired to unequivocally express such an intent, it could have simply directed that upon a motion for increase of the undertaking, the trial court shall set the undertaking at the total financial loss that defendant will probably sustain by reason of attachment irrespective of the outcome of the action.

It must also be pointed out that even if defendant's construction were adopted, the respondent's order of denial would remain valid. Respondent found that defendant did not demonstrate an inability to withstand attachment. ■ On review by extraordinary writ, we are required to assume as true all facts in the conflicting affidavits which support respondent's ruling and express findings of fact. The record amply supports the finding that defendant will probably not suffer financial ruin if $272,938 worth of its marble inventory is attached. The evidence shows that plaintiff intends to avoid attaching critical inventory or defendant's $1 million monthly gross income.

## II

The petition also contends that plaintiff effected an election of its exclusive attachment remedy when it first directed the marshall to file a notice of attachment lien concerning defendant's inventory with the Secretary of State, pursuant to section 488.405, and thus cannot later obtain a levy of a possessory writ of attachment on that inventory pursuant to section 488.395.

Irrespective of the merit of this contention, for which petitioner does not cite authority or give reasoned argument, it was not raised before respondent and is thus not an appropriate issue for review in this proceeding.

## III

■ Defendant argued before respondent below that the undertaking should be increased because of the threat that plaintiff would levy against

assets far in excess of the $272,938 amount specified by the writ of attachment. However, this is not a legitimate basis to increase the undertaking for the purpose of protecting against "wrongful attachment." First, while the amount of the undertaking is the limitation upon a defendant's recovery for certain "wrongful undertakings," sections 490.010 and 490.020 reveal that excessive attachment is not one of the circumstances of wrongful attachment subject to such limitation. Further, defendant has an adequate remedy to obtain immediate release of excessive attachment by resort to section 488.720. Section 488.720 authorizes a defendant to notice a motion for return of property levied upon that is clearly of value in excess of that necessary to satisfy the amount to be secured by the attachment.

The alternative writ is discharged and the peremptory writ is denied.

Kingsley, J., and McClosky, J., concurred.