288 So.2d 573 (1974)
Ronnie Edward BATTLES, Appellant,
v.
STATE of Florida, Appellee.
No. 73-234.
District Court of Appeal of Florida, Second District.
January 25, 1974.
*574 James A. Gardner, Public Defender, and Mary Jo M. Gallay, Asst. Public Defender, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa for appellee.
McNULTY, Judge.
Appellant was convicted of robbery of a Publix Supermarket and, on a second count, of aggravated assault upon one Wayman Allen, a police officer. A careful review of the record reveals that the evidence is overwhelming on the robbery charge and that no error appears in regard thereto. Accordingly, the judgment and sentence imposed on the robbery count should be affirmed. We think, however, the evidence was insufficient to support a conviction of the aggravated assault charge.
Briefly, the facts are that on November 3, 1972 at approximately 7:30 p.m., appellant and four others attempted to rob a Publix Supermarket in Lake Wales. They were all inside the store in the perpetration thereof when several law officers who had been alerted converged on the scene. Several gunfights broke out, most inside the store but one outside the store as one of the robbers (not this appellant) attempted to flee. The aforesaid officer Wayman Allen was one of the last officers to arrive at the scene, and he arrived in time to participate in the one gunfight which was at that time in progress outside the store. The officers succeeded in shooting and killing the robber in that fight at which point Officer Allen returned from the scene thereof to the front entrance of Publix. The sole evidence of what then transpired, and upon which the state is relying to support the conviction of aggravated assault upon Officer Allen, is the testimony of Officer Allen himself which, in material part, follows:
"A. Just as I started to go in [the store] a colored male came out through the exit.
Q. Who was that colored male?
A. That gentleman sitting right there [appellant].
Q. With the checked shirt on?
A. Yes sir.
Q. What was he doing?
A. He was leaving the store, and just as he come out I was standing there, and Officer Allen, David Allen, was there also, and Officer Byrd had just come up behind us.
Q. What was this individual doing as he was coming out?
A. He was leaving the store. He was attempting to get out.
Q. Was he doing anything other than attempting to get out?
A. Well, he had the gun in his hand. He was just leaving.
Q. What kind of gun did he have in his hand?
A. I later found it to be a 38 snub nosed revolver.
Q. What was he doing with that gun?

*575 A. Well, he had it in his hand in such a manner that it was pointing forward.
Q. At who, if anybody?
A. Well, I was standing in front of him.
Q. So did you feel yourself threatened in any way?
A. Yes sir. I most certainly did.
Q. What did you do then?
A. Immediately when seeing him and the weapon I crouched so that my arms were in a forward position and I hollered.
Q. Did you have your weapon with you?
A. I most certainly did. I had it in my hand. I told him drop it.
Q. What did he do?
A. He dropped.
Q. What did you do then?
A. I walked on up to him. I was still holding the pistol in my right hand. I pushed him against the wall, spread his legs, holstered my weapon and searched him.
Q. All right, sir. Did you find anything?
A. Nothing on his person. The weapon was laying at his feet at that time. * * *"
On cross examination, Officer Allen's testimony continues:
Q. Officer Allen, you said that you went to this Publix Market with whom?
A. Officer Gerald Powell and Officer David Allen.
Q. And were you all in a marked vehicle?
A. Yes sir, we were.
Q. Did you pull up in front of the store?
A. As close to it as possible. Officer Byrd and Officer Helm was right in front of it, and I pulled up within, oh, three or four yards in front of their car. You could say yes, I was in front of the market.
Q. Were you in uniform?
A. Yes sir, I was.
Q. Were the other officers in uniform?
A. Yes sir.
* * * * * *
Q. You were in uniform standing in front of that door then, weren't you?
A. Yes sir, I was in uniform.
Q. You had your pistol drawn when you went in there, didn't you?
A. I did.
Q. And yet he came towards you with a pistol drawn, and you had it drawn, and he did see you in uniform to the same door where you were? Is that your testimony?
A. I don't think he saw me.
Q. What would prevent him from seeing you standing in front of the door? Strike that. Were the lights on in the Publix Market?
A. Yes sir. They were on.
Q. Then what would prevent him from seeing you?
A. Shaded area. The lights. Light passes through the windows, but there is a part from the first window east to the door that is shaded, and it is at an angle in such a way  also on the front of the door there is  I don't know what you would call it  it's signs, and also I might not have been directly in *576 front of it. I remember being at such a point when he opened the door, I was there.
Q. So now you were not in front of it? Now you were on the side of it? That's your testimony now?
A. No sir.
Q. You mean to tell me that your light complexion, that he couldn't see you through a shadow?
A. I didn't say he couldn't see me. I said I didn't think he did.
* * *"
And on redirect:
Q. Officer Allen, when you are talking about the possibility of his not seeing you, I believe you were saying that before he came through that the doors were between you, the glass doors?
A. Yes sir.
Q. Are these automatic doors coming out there, too?
A. Yes sir, they are.
Q. Is there any doubt in your mind, sir, that after he came out the door and the gun was pointed at you that he saw you then?
A. No sir. He saw me."
We think that this testimony, which we reiterate is the sole evidence of an aggravated assault upon Officer Wayman Allen, is insufficient to support the charge as a matter of law. The mere intention or opportunity to commit an assault is not enough; there must be some overt act sufficient to demonstrate a threat directed at the person placed in fear.
In view whereof, the judgment and sentence on the charge of aggravated assault should be, and they are hereby, vacated and set aside; and the cause is remanded with directions that the court enter a judgment of not guilty thereof. As noted earlier, the judgment and sentence imposed on the robbery charge should be, and they are accordingly hereby, affirmed.
Affirmed in part and reversed in part.
HOBSON, A.C.J., and BOARDMAN, J., concur.