530 So.2d 371 (1988)
David John LIFKA, Appellant,
v.
STATE of Florida, Appellee.
No. BS-210.
District Court of Appeal of Florida, First District.
August 8, 1988.
*372 Michael E. Allen, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
David John Lifka appeals his conviction upon a four count information after a jury trial. Each count charged that he "did handle, fondle or make an assault upon [the named victim], a child under the age of 16 years, in a lewd, lascivious or indecent manner by willfully exposing his sexual organ to her in a lewd manner, contrary to the provisions of Section 800.04, Florida Statutes." He contends that the trial court erred (1) in denying his motion for judgment of acquittal on the recited charge because the evidence was legally insufficient to prove a lewd assault, and (2) in excluding certain evidence. Because we reverse on appellant's first point, we do not reach the second point.
The facts giving rise to the charges against Lifka, drawing all inferences most favorably for the state, may be summarized as follows. On February 4, 1986, two fourteen year old girls were walking along a street in their residential neighborhood when a young man drove slowly by them in a sports car. The car turned around near the end of the block and came back by them at a slow speed, estimated variously between 10 and 15 miles per hour. As the car slowly passed within five or six feet of the girls, the male driver raised himself from the seat and exposed his erect penis to the girls. The car continued past the girls and left the area. After arriving at the home of one of the girls, they told the mother what had happened and the police were called. The investigating officer took statements from the girls and told them to get the license number of the vehicle should this ever happen again.
Nearly three weeks later, on February 22, 1986, one of the same girls and another 14 year old girl were walking down the street in the same neighborhood when the same car approached them and slowly passed by. The car turned around in the next block and returned toward the girls at approximately 10 to 15 miles per hour, and as it passed within five feet of the girls the male driver raised himself from the seat, removed a towel from across his abdomen, and exposed his erect penis. The car continued past the girls and left the area. This time, however, the girls noted the vehicle license number, ran to a neighbor who was standing in her yard nearby and used her phone to call the mother of one of the girls. The police were called by the mother, and the investigating officer came to her house, obtained the license number, and took statements from the girls. Inquiry revealed that a sports car bearing that license number was registered in the name of appellant Lifka.
Lifka was notified by the police to come to the station for questioning and did so voluntarily. Pictures were taken of him and later shown to the girls. They identified Lifka's picture as the man in the car, and again identified him at trial. The police officer arrested Lifka upon charges of committing a "lewd and lascivious act in the presence of a child" in violation of *373 section 800.04, Florida Statutes (1985), which provides:
Any person who:
(1) Handles, fondles or makes an assault upon any child under the age of 16 in a lewd, lascivious, or indecent manner;
(2) Commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years; or
(3) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years without committing the crime of sexual battery is guilty of a felony in the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.
Although the investigating officer had charged Lifka under subsection 800.04(3), relating to the commission of lewd acts, as the basis for arrest, the prosecuting attorney, for reasons not made apparent in the record or in the briefs, elected to charge Lifka under the wording of subsection 800.04(1) by alleging lewd and lascivious assaults, and to try the case solely on that legal theory.[1] There being no evidence of handling or fondling, the state argues the sufficiency of the evidence to support the conviction entirely upon the premise that it proved lewd assault in violation of section 800.04(1). The defendant, on the other hand, has argued to the court below and to this court that the evidence did not prove an essential element of assault  an overt threat to do violence  but proved only that defendant exposed his genitals in a vulgar manner in violation of section 800.03, Florida Statutes (1985), a first degree misdemeanor.
The three young girls involved testified at trial. In describing the defendant's conduct, each of them used words to the effect that "he drove by us and exposed himself" (Tr. 26); "he exposed his penis" (Tr. 37); "we saw him lift himself up and expose his penis" (Tr. 45); "a man passed us in a blue car and exposed himself" (Tr. 81); "he exposed his penis to us" (Tr. 86, 88); "that's when he exposed himself" (Tr. 113); or "he went by and exposed himself to us" (Tr. 118). The mother of one girl testified that her daughter told her "that the car had stopped and someone had flashed her" (Tr. 73). The investigating officer said he was told by the girls that a man had "exposed himself to them" (Tr. 127). Throughout the trial the prosecuting attorney referred to the defendant as the man who exposed himself to the girls.
The girls testified that the man in the car never said anything to them (Tr. 60), and never made any overt movements to come out of the car at them or to drive the car at them or anything like that (Tr. 61, 98, 123). The car "just drove off" and "he didn't do anything" (Tr. 90). The girls did say, however, that after the defendant exposed himself they were surprised and became scared that he might come back again and do something worse.
Appellant pled not guilty, denied that he was the individual involved, and presented substantial evidence through other witnesses to support his alibi defense as to the incident that occurred on February 4. He was unable to establish an alibi defense to the February 22 incident. At the conclusion of the state's case and again at the close of all evidence, defendant's counsel moved for a judgment of acquittal on the offense charged, arguing that the evidence construed most favorably for the state completely failed to prove the assaults alleged in the information and that the evidence was sufficient to prove only vulgar exposure of one's genitals in violation of section 800.03. The trial court initially took the motion under advisement, expressing considerable difficulty with the sufficiency of the state's case to prove the alleged assaults, but eventually decided to let *374 the matter go to the jury.[2] The trial court, with the state's concurrence, instructed the jury on the lesser included offense of indecent exposure under section 800.03. The state did not request any instruction on the criminal offense defined in section 800.04(3), and throughout the trial (and this appeal) has steadfastly adhered to the position that this is an assault case. The jury returned a verdict of guilty as charged on all four counts. Judge Oliff, who presided over the trial of the case, thereafter recused himself before sentencing and hearing on defendant's post trial motions. Judge Parsons, who was then assigned to the case, denied all post-trial motions.[3]
We hold that the state's evidence was legally insufficient to prove the offense of lewd and lascivious assault defined in section 800.04(1), as charged in the information. Regardless of whether the evidence could be held to prove the commission of a lewd or lascivious act in the presence of a child in violation of section 800.04(3), see, e.g., Egal v. State, 469 So.2d 196 (Fla. 2d DCA), pet. for rev. denied, 476 So.2d 673 (Fla. 1985), the state has at all times insisted upon charging and trying this case as one involving a lewd assault proscribed by section 800.04(1). The state requested no instruction based on section 800.04(3). The trial judge, with the state's concurrence, charged the jury that before they could find the defendant guilty of the charges made, the state had to prove two elements: (1) that the girls were under the age of 16 years (which is not in dispute), and (2) that the defendant "handled or fondled" the named victim "in a lewd, lascivious or indecent manner, or that the defendant made an assault upon [the named victim] in a lewd, lascivious or indecent manner" (Tr. 472). The court's instructions then defined assault as follows:
An assault is defined as an intentional and unlawful threat either by word or act to do violence to the victim; and two, that at the time the defendant appeared to have the ability to carry out the threat; and three, that the act of the defendant created in the victim a well-founded fear that the violence was about to take place.
(Tr. 472). This definition is taken from the Florida Standard Jury Instructions in Criminal Cases. The court then instructed the jury on the definition of "lewd, lascivious and indecent" in accordance with these standard jury instructions. The court also instructed the jury on two lesser included offenses: (1) exposure of sexual organ in a *375 vulgar or indecent manner, prohibited by section 800.03, and (2) simple assault.
The state approved the instructions as given and does not question on appeal this definition of assault. It insists, rather, that the evidence was legally sufficient to prove each of the three elements of assault outlined by the trial judge, arguing as follows:
The threat [to] do violence to the victims was evidenced by the manner in which the appellant slowly drove his car past the victims, turned around and slowly drove toward the girls. The appellant also manifested his intent to do physical harm to the girls by the very fact that he exposed his erect penis to them. This was in essence a threat to do a sexual battery. The appellant's erect penis and the fact that the girls were by themselves is also evidence of the ability to carry out the threat, and that the attack was about to take place. The victims also testified that they were surprised and frightened by the actions of the appellant.
(Appellee's Brief, p. 6-7). To buttress its position, the state also suggests that "it would be realistic to imply from the actions of the appellant that he intended to pull the girls into his car [and] drive them to a secluded area and sexually batter and otherwise harm them." (Appellee's Brief, p. 7).
The law is clear that "the mere intention or opportunity to commit an assault is not enough; there must be some overt act sufficient to demonstrate a threat directed at the person placed in fear." Battles v. State, 288 So.2d 573, 576 (Fla. 2d DCA), cert. denied, 295 So.2d 302 (Fla. 1974). The state's argument in this case does no more than point out that the defendant could have committed an assault or battery; the state is unable to point to a single overt act by the defendant that constitutes a threat to do violence or injury to the girls. Every participant in this trial characterized the defendant's conduct as exposing himself or "flashing" before the girls, and nothing more. No witness gave any testimony suggesting any overt act that amounted to a threat to injure or attack anyone. No witness intimated that the manner in which the car was driven threatened their safety. When the defendant exposed himself, he did not say anything to the girls, made no threatening gesture, and left the scene immediately after passing them. The state's argument overlooks that the February 22 incident took place near a neighbor who was standing in her yard. No doubt these young girls were surprised and became scared as a result of this bizarre occurrence, but their fear was not of what the defendant threatened he would and could then and there do; rather the fear they described was that he might turn around and come back, an act the defendant did not do. To indulge the inferences of founded threats suggested by the state on this evidence is to engage in pure speculation, which we are not permitted to do. The evidence in this case is equivocal at best and does not support the conviction of lewd assault. Cf. Munday v. State, 254 So.2d 33 (Fla. 3d DCA 1971).[4]
*376 It must be made perfectly clear that we do not for an instant condone the conduct of which the defendant was found guilty by the jury; such acts of exposure were clearly vulgar, lewd, indecent, and offensive. But it is our duty to determine whether the acts complained of constitute in law the offense of lewd assault, which was the charge brought and tried by the state. Due to the absence of any evidence of an overt threat, as defined in the instructions, we are compelled to conclude that the defendant's conduct did not constitute an assault. Because the state has chosen not to charge and try the defendant for committing a lewd or lascivious act in the presence of a child under section 800.04(3), we cannot consider whether the evidence would be sufficient to sustain a conviction under that section. We are limited to considering the charge made by the information, the lesser included offenses which were submitted to the jury at the state's request consistent with its theory of guilt, and the state's arguments in support of conviction made on appeal. At no time has the state suggested that this conviction should or could be sustained as a violation of section 800.04(3).
The evidence was obviously sufficient to support conviction of the lesser included offense of indecent exposure in violation of section 800.03. We note, however, that section 800.03 is directed at punishing the act of indecent exposure irrespective of the number of persons present; thus, the act of exposure on February 4 and again on February 22 would constitute two offenses, not four separate offenses as charged in the information. Cf. State v. Ell-Gee, Inc., 255 So.2d 542 (Fla. 3d DCA 1971).
The judgment of conviction for violating section 800.04(1) and the sentence imposed thereon is reversed, and the case is remanded for entry of a judgment of conviction and sentence for violation of section 800.03 consistent with this opinion. See Fowler v. State, 492 So.2d 1344, 1352 at n. 11 (Fla. 1st DCA 1986), review denied, 503 So.2d 328 (Fla. 1987).
REVERSED AND REMANDED.
WIGGINTON, J., concurs.
BOOTH, J., concurs in part and dissents in part with written opinion.
BOOTH, Judge, concurring in part and dissenting in part.
I would affirm the conviction for lewd assault on a child as to Count III, involving the victim who was present both times defendant committed the acts leading to the charges herein. The trial court properly instructed the jury that assault is an "unlawful threat either by word or act to do violence" and that the defendant must appear to have the ability to carry out the threat and create a well-founded fear in the victim that violence was about to take place.[5]
The majority's recitation of the evidence shows that the conduct which resulted in the defendant's apprehension was the second occurrence in three weeks. One of the girls in the second incident had been present during the first, and she immediately recognized the unusual blue-colored car as the same one driven by the man (defendant) who had exposed his genitals to the girls near the school grounds several weeks before. When the car passed her and then turned around at the corner to return, this victim became very frightened because she thought the defendant had somehow tracked her down. The defendant obviously wanted her to recognize him and be put in fear. Initially approaching from behind, he revved the engine when his automobile was within a few feet of the victim. According to the victim, the street on which this incident took place was not well-traveled and had no sidewalks. Consequently, the girls were walking in the road, and when the defendant returned from the *377 corner, he actually had to swerve his car around them in order to avoid hitting them. When he exposed himself this time, he raised up in the seat while swerving the car around the girls. They saw that he was not wearing pants but only a towel, which he removed.[6] Thus, we have a defendant using his vehicle in an aggressive manner, who was larger than the victim, and who had the ability to quickly transport her from the scene if he so chose. Defendant's lewd conduct, state of nudity, and abnormal behavior understandably induced a well-founded fear in the mind of the victim that she was threatened with imminent violence to her person. I strongly disagree with the majority that defendant committed no overt acts sufficient to demonstrate a threat to the victim.
It is highly significant that Section 800.04, Florida Statutes, was specifically designed to protect children under the age of 16. The victim who was present at both assaults was 14, and the combination of acts involved here are in my view sufficient to create an objective, reasonable fear of violence in a teenager. This was more than indecent exposure. Defendant's conduct was aggressive and calculated to induce fear in the young, defenseless children he chose as his victims. Under the circumstances, I have no problem understanding why the victim believed she had been hunted down. The defendant's actions are reminiscent of a cat playing with a mouse.
Lewd assault on a child is not a specific intent crime, and the intent of the defendant can be imputed from the conduct and circumstances. Harris v. State, 418 So.2d 416 (Fla. 1st DCA 1982), review denied, 426 So.2d 26 (Fla. 1983); Egal v. State, 469 So.2d 196 (Fla. 2d DCA 1985), review denied, 476 So.2d 673 (Fla. 1985). Section 800.04, Florida Statutes, is written to encompass acts involving victim contact, as well as acts which do not involve victim contact. Worling v. State, 484 So.2d 94 (Fla. 5th DCA 1986). Assault does not require contact with the victim and is, by definition, the doing of an act(s) creating in the mind of the victim reasonable fear that violence is imminent. There is no requirement that the perpetrator of a lewd assault intend to commit rape or sexual battery, or that the victim of a lewd assault fear rape or any specific offense. The Legislature has seen fit to separate the lewd assault statute from the section on assault and battery, Section 784, et seq., Florida Statutes, and has penalized lewd assault against children as a second degree felony, making it an even more serious offense than aggravated assault.
Thus, the jury, under proper instructions from the court, evaluated the facts presented in this case and determined that the conduct of the defendant created a reasonable fear in the mind of the victim that violence was about to take place and, at least as to Count III, that jury verdict should stand.

APPENDIX "A" TO CONCURRING AND DISSENTING OPINION

 The precise instruction given was:
 Now so that you can determine if the defendant is
 guilty or not guilty of that crime I will define for
 you what an assault is. An assault is defined as an
 intentional and unlawful threat either by word or act
 to do violence to the victim; and two, that at the
 time the defendant appeared to have the ability to
 carry out the threat; and three, that the act of the
 defendant created in the victim a well-founded fear
 that the violence was about to take place.
 As used in regard to this offense the word lewd,
 lascivious and indecent means the same thing and
 means a wicked, lustful, unchaste, sensuous or
 sensual intent on the part of the person doing the
 act.
 In order to be convicted of this crime it is not
 necessary that the State prove the defendant has an
 intent to commit sexual battery.
 The first paragraph of this definition of assault is not
specific to lewd assault and is the standard jury instruction
given for all types of assaults prosecuted in this state.
*378 Ch. 784, Fla. Stat.; Fla.Std. Jury Instr. (Crim.) Assault and
Battery p. 87 (1987). In Willard v. State, 386 So.2d 869, 870-871
(Fla. 1st DCA 1980), this court upheld a conviction of aggravated
assault, holding:
 The relevant evidence presented to the Judge was
 that Willard went into a convenience store sometime
 after 2:00 A.M. and conversed with the clerk. After
 the clerk returned to sweeping the floor, he looked
 up and saw Willard walking out of the store with two
 six-packs of beer under his arm. The clerk went to
 the door and told Willard to stop, that he could not
 get beer at that time of the morning. Willard turned
 and faced him and had what appeared to be the blade
 of a knife in his right hand. Willard did not say
 anything and did not step toward the clerk or
 brandish the knife, but the clerk was afraid that
 Willard was going to stab him and he returned to the
 store. The two men had been about four to six feet
 apart. Willard then drove off.
 ... .
 Although we realize that this is a close case, we
 disagree that the evidence of aggravated assault is
 insufficient... . As for the commission of an act
 creating a well-founded fear of imminent violence, we
 believe that it is not necessary that the knife be
 brandished or that the perpetrator move toward the
 victim. ... [T]his was, in our opinion, an act
 which created a well-founded fear of imminent
 violence on the part of the clerk. [emphasis added]
 APPENDIX "B" TO CONCURRING
 AND DISSENTING OPINION
The foregoing resume of the evidence is based on the following
testimony:
 [Count III victim; first incident]
 Q ... As it [defendant's car] passed you, how far
 away was it when it actually was going past you?
 A It was probably about five feet.
 ... .
 A It went up the street about a block and a half
 and it pulled into a driveway and it turned around.
 ... .
 Q After it turned around, what did the car do?
 A It just started driving towards us.
 ... .
 Q Okay. Why were you still looking at the car?
 A Because it had turned around and it scared us.
 Q You were worried about the car coming at you?
 A Yes. [Count III victim; second incident]
 Q Are there any sidewalks on that street?
 A No.
 ... .
 Q Were you actually walking on the street itself?
 A Yes.
 Q What first drew your attention to the car? You
 say you saw this car again, how did that occur?
 A We heard a car behind us and we turned around to
 look.
 Q All right. And where was the car; was it behind
 you?
 A Yes.
 ... .
 A He just drove past us and went up around the
 corner.
 ... .
 Q All right. And what happened then after you saw
 him go around the corner?
 A He turned around and came back.
 Q Were you watching him as he was coming back?
 A As he came back around the corner we could see
 him.
 Q Okay. Why were you watching the car?
 A Because I knew it was the same car and I was
 scared.
 Q What did you do then as he came back towards you?
 What happened? What did he do and what did you do?
 A We just watched the car come towards us and we
 went 
 Q How fast was he going?
 A He was going slow.
*379 Q What did the car do as it actually came up to
 you?
 A We were walking against traffic so he was coming
 right towards us, and he went around us and was up
 next to us.
 Q And how close was he this time when he had to go
 around you?
 A Probably about, you know, four to five feet.
 ... .
 Q Were you watching him as he came up to you?
 A Yes.
 Q What were you thinking at that time? What were
 you thinking?
 A I was thinking that he had come after me or
 something, because, you know, it had happened once
 before.
 ... .
 Q And what did you see?
 A We saw him lift himself up and expose his penis.
 Q Okay. Did he  did you notice if he had any
 clothes on this time?
 A I believe he had a towel which he removed.
 ... .
 Q Okay. Going back just a minute, after he exposed
 himself to you again, what were you thinking or how
 were you feeling?
 A I was really scared because it had been the
 second time that it happened and I didn't know if he
 was going to come back and do something worse this
 time or not.
 [Count IV victim; second incident]
 Q ... [W]hat caused you to first notice this man
 in the car?
 A He came up behind us and revved his engine.
 Q Where was that? Was that also on Balboa?
 A Yes.
 Q What happened when  did you hear him rev the
 engine?
 A Yes.
 Q Okay. What happened after he did that? What did
 you do?
 A I turned around and saw the car.
 ... .
 Q ... . When you turned around and you saw the
 car, it revved its engine, how far away were you from
 it?
 A About five feet.
 [emphasis added].

NOTES
[1] One reason for charging assault under section 800.04(1) rather a lewd act under section 800.04(3) may be that a charge of lewd assault focuses on the person assaulted so that a separate charge would lie as to each victim on both occasions, supporting a total of four felony charges; whereas a charge of committing a lewd act in the presence of a child focuses on the commission of the lewd act whether in the presence of one or more children, thus limiting the number of offenses that could be charged to one count for each separate incident.
[2] At one point during the charge conference, the trial judge explained to counsel:

I tell you quite frankly I thought about this thing a bit last night and I was convinced last night I was going to direct a judgment of acquittal; earlier this morning I thought about it some more and I was, well, not acquittal but I was going to reduce the charge, but later on today I decided that, no, it was an assault. And I tell you quite frankly now I am undecided. I think  I think it's an assault, I think it's marginally an assault. I think the State should have charged, well, I don't think it should be here to start with. You should have charged him with indecent exposure down in County Court instead of us wasting our time on something like this. And I am sincere about it, I am not just talking because I don't want this case up here. I just don't think it is a felony court case. * * * I say I think it's a County Court case, not because I don't think it might not be a felony, but because it's a case that ought to be tried there because we shouldn't be wasting your time on a low grade felony. * * * That's not why I said it shouldn't be here, not because the State hasn't made out the crime, I just don't feel as though it's the kind of case that ought to be prosecuted in Circuit Court. It has nothing to do with the legal sufficiency of the charge. That's just part of the system.
(Tr. 378-79). We can readily symphathize with the trial judge's difficulty in understanding why this case should have been brought as a second degree felony assault charge in view of the lack of evidence of any overt threat to injure the girls.
[3] The sentencing guidelines recommended sentence was 3 1/2 to 4 1/2 years. The defendant had no prior criminal record and Judge Parsons withheld adjudication and placed defendant on probation for five years with six months to be served in county jail, reciting that the guidelines "are outrageous when applied in the factual context." The state has not challenged the propriety of this downward departure from the guidelines sentence. Apparently the presentence investigation report indicated that the victims and their families did not want to see the defendant sent to jail for these incidents and recommended that he receive some form of counseling (Tr. 536).
[4] We cannot agree with the dissent's characterization of the inferences that legitimately can be drawn from the evidence of record. For example, the record simply does not establish that appellant "actually had to swerve around them [the girls] in order to avoid hitting them" and exposed himself "while swerving the car around the girls." Nor is there any evidence to sustain the characterization that appellant was "using his vehicle in an aggressive manner" as an overt act of assault. There simply is no testimony from any of the three girls involved that appellant attempted to run them down or "swerved" his car to avoid colliding with them; the only testimony is that appellant drove the car slowly by them about 5 feet away. The young girl involved in both incidents, when asked whether appellant "made any overt movements to come out of the car at you or to drive the car at you or anything like that," responded, "No" (Tr. 61). The other girl involved in the first incident also agreed that appellant "didn't try to drive the car over you or move towards you or come out of the car or anything like that" (Tr. 98). The third girl, who was involved in the second incident, when questioned whether appellant "didn't say anything to you" and "made no movements towards you or anything like that," responded that this was correct (Tr. 123).

Furthermore, at no time in the trial court did the state contend that appellant committed an assault by using his vehicle in an aggressive manner. The state's case for assault is based on the sole contention that appellant's exposing his erect penis to the girls constitutes a lewd and lascivious assault without being accompanied by any other overt act of aggression, as is made patently clear by the opening and closing argument of the prosecutor (Tr. 393-408; 449-467).
[5] Appendix "A" to Concurring and Dissenting Opinion.
[6] Appendix "B" to Concurring and Dissenting Opinion.