[No. E003100. Fourth Dist., Div. Two. Aug. 14, 1986.]

In re JOSEPH RAY PARKS on Habeas Corpus.

COUNSEL

Michael Ian Garey, under appointment by the Court of Appeal, for Petitioner.

Grover C. Trask II, District Attorney, and William E. Mitchell, Deputy District Attorney, for Respondent.

OPINION

**RICKLES, Acting P. J.**—On November 12, 1963, Joseph Parks (petitioner) was convicted of forcible rape (Pen. Code, § 261, subd. 3).[1] As a result of his conviction, petitioner was subject to the requirements of section 290, registration of sex offenders.[2]

On May 1, 1984, the Riverside District Attorney filed a complaint in the Municipal Court, Corona Judicial District, Riverside County, alleging petitioner had failed to register pursuant to section 290, subdivision (f).[3] ■ Petitioner entered a plea of not guilty and on July 30, 1984, he filed a motion to dismiss, claiming the prosecution was barred by the statute of limitation.[4] The trial court found section 290, subdivision (f), a "continuing offense" and ruled the prosecution was not barred.

On September 11, 1984, petitioner sought and obtained in the Superior Court, County of Riverside, the issuance of an alternative writ of prohibition. The superior court issued a ruling denying the writ, on the ground section 290 is a continuing offense. Shortly thereafter, petitioner filed a petition for writ of prohibition/mandate and stay in this court. We denied the writ on November 5, 1984.

On November 14, 1984, petitioner petitioned for hearing in the California Supreme Court. The petition was denied.

On April 30, 1985, trial was commenced in the Riverside County Municipal Court, Corona Judicial District. Petitioner was found guilty of vi-

---

[1] Unless otherwise indicated, all section references in this opinion are to the Penal Code.

[2] Petitioner was apprised of his duties under section 290 and signed a notice of registration requirement form on August 6, 1968.

[3] Petitioner stipulated he established permanent residence in the City of Corona on or about April 21, 1981.

[4] When this offense was committed, section 801, subdivision (a), provided the applicable statute of limitation. "[A]n indictment for any misdemeanor shall be found or an information or complaint filed within one year after its commission."

olating section 290. He was sentenced to one year informal probation on the condition he serve 90 days in the Riverside County jail.

Petitioner appealed to the Appellate Department of the Riverside Superior Court. Petitioner's conviction was affirmed. The appellate department granted certiorari to this court. On December 31, 1985, we denied petitioner's request for transfer. Petition for review was also denied.

On January 15, 1986, petitioner filed a "Petition for Writ of Mandate and Stay," in the California Supreme Court, seeking to have this court accept transfer. The Supreme Court denied petitioner's writ, without prejudice to the filing of a writ of habeas corpus "challenging compliance with the statute of limitation in the Court of Appeal."

Petitioner filed a writ of habeas corpus in the Supreme Court. On April 24, 1986, the Supreme Court transferred the proceedings to this court with directions to issue an order to show cause and set the matter for hearing.

For the reasons explained below, we deny the writ.

Initially we observe neither party has cited a case which directly addresses the issue raised by this writ. We have been unable to locate a case directly on point. Our decision is guided by the considerations enunciated in *Toussie v. United States* (1970) 397 U.S. 112 [25 L.Ed.2d 156, 90 S.Ct. 858].

In distinguishing the "instantaneous" from the "continuing" offense, the *Toussie* court observed the following:[5] "The purpose of a statute of

---

[5]Similar policy considerations have been expressed in California. *Parnell* v. *Superior Court* (1981) 119 Cal.App.3d 392, 406 [173 Cal.Rptr. 906], noted: "In *People* v. *Zamora* (1976) 18 Cal.3d 538, 546-547 [134 Cal.Rptr. 784, 557 P.2d 75], our Supreme Court set forth the policy considerations which underlie the concept of a period of limitation: 'To some extent, the concept of a period of limitation developed in recognition of the ever increasing difficulty faced by both the government and a criminal defendant in obtaining reliable evidence (or any evidence at all) as time passes following the commission of a crime. . . . [¶] . . . The possibility of self-reformation by the criminal offender may lessen the need for society to impose corrective sanctions and society's impulse for retribution may correspondingly diminish as time passes. Statutes of limitation also encourage the swift and effective enforcement of the law, hopefully producing a stronger deterrent effect. They tend to limit the chance that the first offense will spawn blackmail of the offender by others threatening disclosure—crime breeding more crime. Finally, adoption of a period of limitation represents a legislative recognition that for all but the most serious of offenses (such as murder or kidnaping) a never-ending threat of prosecution is more detrimental to the functioning of a civilized society than it is beneficial.' In setting aside the convictions, the Supreme Court in *Zamora* explained: 'It bears repeating that we have not done so [set aside the convictions] out of any sympathy for these defendants. Our action has been mandated by adherence to the rule that statutes of limitation are to be strictly construed in favor of the accused.' (*Id.*, at p. 574.)"

limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before 'the principle that criminal limitations statutes are "to be liberally interpreted in favor of repose," [citation].' [Citation.] We have also said that '[s]tatutes of limitations normally begin to run when the crime is complete.' [Citations.] And Congress has declared a policy that the statute of limitations should not be extended '[e]xcept as otherwise expressly provided by law.' 18 U.S.C. § 3282. These principles indicate that the doctrine of continuing offenses should be applied in only limited circumstances since, as the Court of Appeals correctly observed in this case, '[t]he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.' [Citation.] *These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.*" (*Toussie* v. *United States, supra,* 397 U.S. at pp. 114-115 [25 L.Ed.2d at p. 161], italics added.)[6]

Petitioner views the express terms of section 290, subdivisions (a) and (e),[7] and concludes the offense is completed upon the failure of the convicted

---

[6]Petitioner relies upon authority derivative of *Toussie,* similarly holding: "All criminal offenses, except those considered continuing offenses, are committed when every act which is an element of the offense has occurred. Continuing offenses are committed when the course of prohibited conduct, or the accused's complicity therein, has terminated. To constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative purpose to make the prohibited course of conduct a continuing offense." (*State* v. *Gainer* (1980) 227 Kan. 670 [608 P.2d 968, 970].)

[7]When this offense was committed, section 290, in pertinent part, provided:

"(a) Any person who, since the first day of July, 1944, has been or is hereafter convicted in the State of California . . . of any offense defined in . . . subdivision 2 or 3 of Section 261, . . . shall within 30 days after the effective date of this section or within 30 days of his coming into any county or city, or city and county in which he resides or is temporarily domiciled for such length of time register with the chief of police of the city in which he resides or the sheriff of the county if he resides in an unincorporated area.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) If any person required to register hereunder changes his residence address he shall inform, in writing within 10 days, the law enforcement agency with whom he last registered of his new address."

sex offender to register.[8] He claims: "[N]othing in the language of Penal Code section 290 explicitly states that it is to be viewed as a continuing offense. Looking to the express language of the section, it is clear that it is a crime to *move* into a new area without complying with the section's provisions *within the applicable grace period*. It does *not* make criminal the 'act' of residing in a locality without being registered. Nor does the section carry an express provision that it defines a 'continuing offense.'" (Original italics.)

We find petitioner's argument, he has an initial duty to register which is renewed upon each move, incongruous with his argument that his failure to register is an instantaneous offense. While we agree section 290 does not "explicitly state" a violation is to be viewed as a continuing offense, nor does it have an "express provision" defining a violation as a continuing offense, the "explicit language of the substantive criminal statute compels" the conclusion it is a continuing offense.

Section 290, subdivision (a), imposes a *continuing duty to register within 30 days* (now 14 days) following each change of address. This requirement pertains to both temporary and permanent moves of more than 30 days' duration. The statute *does not relieve a person of the duty to register* if he fails to do so within the 30-day time frame. The 30-day period was employed to discourage premature police action and allow a reasonable time to accomplish registration; it was not intended as a signal to sex offenders to "lay low" for one year. The statute obviously intended the continuing failure to register to be the criminal act.

Our construction of section 290 is in harmony and accordance with section 4. "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and promote justice." (See also *Parnell* v. *Superior Court, supra,* 119 Cal.App.3d 392, 407-409, holding kidnapping a continuing offense.)

Even were we to conclude the explicit language of section 290 did not compel the finding it is a continuing offense, we believe "the nature of the crime involved is such that Congress [the Legislature] must assuredly have intended that it be treated as a continuing one." (*Toussie* v. *United States, supra,* 397 U.S. at p. 115 [25 L.Ed.2d at p. 161].) Section 290's purpose is to assure that persons convicted of one of its enumerated crimes "shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." (*Bar-*

---

[8]Petitioner likens a sex offender's failure to register to a taxpayer's failure to file a return.

*rows* v. *Municipal Court* (1970) 1 Cal.3d 821, 825-826 [83 Cal.Rptr. 819, 464 P.2d 483].) The Supreme Court similarly concluded in *United States* v. *Bailey* (1980) 444 U.S. 394, 413 [62 L.Ed.2d 575, 592, 100 S.Ct. 624], that, given the continuing threat to society posed by an escaped prisoner, Congress must have intended a continuing offense.

We find further support for our conclusion in California authority. *In re Reed* (1983) 33 Cal.3d 914, 919 [191 Cal.Rptr. 658, 663 P.2d 216], held section 290 "applies automatically to the enumerated offense, and imposes on each person convicted a lifelong obligation to register. A misdemeanant may be released from this 'penalty or disability' pursuant to section 1203.4 . . . ." (See also *Barrows* v. *Municipal Court, supra,* at p. 825; *In re Smith* (1972) 7 Cal.3d 362, 367 [102 Cal.Rptr. 335, 497 P.2d 807].)

Finally, the traditional purpose for a statute of limitation does not compel our finding petitioner's failure to register an instantaneous offense. First, evidentiary concerns are limited exclusively to whether the sex offender has registered. Passage of time is not likely to obscure the absence or presence of such a record. Second, prompt investigation of suspected criminal behavior will not be fostered. Section 290 was enacted to deter recidivism by facilitating the apprehension of repeat offenders. (*In re Reed, supra,* at p. 922.) The absence of a registrant could go undetected when he fails to notify authorities and is not sought by them.[9] Third, the Legislature has created a registration procedure for sex offenders because they are more likely to commit repeated sex offenses. It has determined "self-reformation" is unlikely and continued surveillance is necessary.

We will not eviscerate section 290 by finding it an instantaneous offense. Were we to do so, we would be encouraging sex offenders who move to remain silent and sit out the applicable statute of limitation. By doing so, they could avoid the requirements of registration until their next move,[10] and effectively lose themselves in the shuffle.

---

[9]Even though the court in *People* v. *Zamora* (1976) 18 Cal.3d 538, 561 [134 Cal.Rptr. 784, 557 P.2d 75], found an instantaneous offense, it recognized under certain circumstances the operations of the statute of limitation should be deferred until discovery of the violation. The case at bench would also lend itself to such an alternative treatment.

[10]As *In re Reed, supra,* at pages 920-921, points out, while the obligation to register may be terminated pursuant to section 1203.4, there are no provisions for expunging initial and subsequent registration. The sex offender will always remain registered with his name, photograph, fingerprints and other relevant information permanently available to the police. The permanent stigma of a sex registrant would remain. Should petitioner avoid his duty to register due to the passing of the statute of limitation, he will eliminate the obvious goal of section 290, his ready availability, and he will avoid the disabilities imposed by the section.

Writ denied.

McDaniel, J., and Dorr, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.