The State appeals the trial court's dismissal of an indictment that charged the appellee, Paul Goldberg, with failing or refusing to register as a convicted sex offender, a violation of § 13A-11-200, Ala. Code 1975. It appears that the appellee pled guilty to first-degree sexual abuse in 1986, that the trial court sentenced him to serve a term of two years in prison, and that the trial court suspended the sentence and placed him on probation for three years. On November 9, 2000, he was indicted for failing or refusing to register as a convicted sex offender. He filed a motion to dismiss, arguing that the prosecution was barred by the limitations period set forth in § 15-3-1, Ala. Code 1975, which provides: "The prosecution of all felonies, except those specified in Sections 15-3-3 and 15-3-5, must be commenced within three years after the commission of the offense." After the State responded, the trial court entered the following order: "Case is dismissed on authority of Toussie v. U.S., 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156
[statute of limitations]." (C.R. 2.) The State appealed.
The State argues that "a violation of § 13A-11-200 of the Code ofAlabama — failure to register as a sex offender — constitutes a continuing offense for the purposes of tolling the statute of limitations." (State's brief at p. 3.)
 "`In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time. Note, Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution, 102 Pa. L. Rev. 630, 641-642 (1954).' John v. State, 96 Wis.2d 183, 188, 291 N.W.2d 502, 505 *Page 125 
 (1980). `Even if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act.' 96 Wis. at 188, 291 N.W.2d at 505.
 "Because of the continuing offense concept, by extending limitations periods, conflicts with the policies and principles on which limitations periods are based, the concept `should be applied in only limited circumstances,' Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (refusal to register for the draft not a continuing offense), such as when required by the `explicit language of the substantive criminal statute,' id. at 115, 90 S.Ct. at 860, or by the inherent `nature of the crime involved.' Id. Neither of these circumstances is present in this case."
Alabama State Bar v. Chandler, 611 So.2d 1046, 1048 (Ala. 1992).
Section 13A-11-200, Ala. Code 1975, provides:
 "If any person, except a delinquent child, as defined in Section 12-15-1, residing in Alabama, has heretofore been convicted, or shall be convicted in any state or municipal court in Alabama or so convicted in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama for any of the offenses hereinafter enumerated, such person shall, upon his or her release from legal custody, register with the sheriff of the county of his or her legal residence within 30 days following such release or within 30 days after September 7, 1967, in case such person was released prior to such date. The offenses above referred to are generally any act of sexual perversion involving a member of the same or the opposite sex, or any sexual abuse of any member of the same or the opposite sex or any attempt to commit any of these acts, and without limiting the generality of the above statement shall include specifically: rape, as proscribed by Sections 13A-6-61 and 13A-6-62; sodomy, as proscribed by Sections 13A-6-63 and 13A-6-64; sexual misconduct, as proscribed by Section 13A-6-65; indecent exposure, as proscribed by Section 13A-6-68; promoting prostitution in the first or second degree, as proscribed by Sections 13A-12-111 and 13A-12-112; obscenity, as proscribed by Section 13A-12-131; incest, as proscribed by Section 13A-13-3; or the attempt to commit any of the above offenses.
 "Any person having been so convicted shall upon moving his legal residence from one county to another register with the sheriff of the county to which he has moved within 30 days after such removal. It shall be unlawful for a convicted sex offender as described in this article to fail or refuse to register as herein required."
Although § 13A-11-200, Ala. Code 1975, does not expressly state that failing or refusing to register as a convicted sex offender is a continuing offense, the explicit language of § 13A-11-200, Ala. Code 1975, indicates that the offense is a continuing offense. Section13A-11-200, Ala. Code 1975, imposes a continuing duty to register with law enforcement authorities within 30 days after each change of residence. Moreover, the statute does not specifically state that a person will be relieved of the duty to register if he does not do so within the 30-day period. Therefore, the explicit language of the statute indicates that failing or refusing to register as a convicted sex offender was intended to be a continuing offense.
The nature of the crime involved also compels the conclusion that failing or refusing to register as a convicted sex offender is a continuing offense. When *Page 126 
examining the nature of the crime involved, we adhere to the following principles of statutory construction:
 "`Where, as here, this Court is called upon to construe a statute, the fundamental rule is that the court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.' Ex parte_Holladay, 466 So.2d 956, 960
(Ala. 1985). `[T]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. . . . In construing the statute, this Court should gather the intent of the legislature from the language of the statute itself, if possible. . . . We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute.' Pace v. Armstrong World Industries, Inc., 578 So.2d 281, 283 (Ala. 1991). `If possible, the intent of the legislature should be gathered from the language of the statute itself. However, if the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another.' Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala. 1991)."
Carroll v. State, 599 So.2d 1253, 1264 (Ala.Crim.App. 1992), aff'd,627 So.2d 874 (Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207,127 L.Ed.2d 554 (1994).
The sparse legislative history of § 13A-11-200, Ala. Code 1975, does not provide any insight into the Legislature's intent in enacting the statute. However, the Community Notification Act, §§ 15-20-20
through -37, Ala. Code 1975, addresses a similar concern. Therefore, we look to the legislative intent behind that statute for guidance. In this regard, § 15-20-20.1, Ala. Code 1975, states, in part:
 "The Legislature finds that the danger of recidivism posed by criminal sex offenders and that the protection of the public from these offenders is a paramount concern or interest to government. The Legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations, and quickly apprehend criminal sex offenders are impaired by the lack of information about criminal sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend, and prosecute criminal sex offenders.
 "The system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
 "Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the *Page 127 
 general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities."
Clearly, the Legislature has concluded that sex offenders pose a continuous threat to society. It has also concluded that a registry is necessary to continually monitor their whereabouts for the protection of the public. Therefore, it must have intended for a violation of §13A-11-200, Ala. Code 1975, to constitute a continuing offense.
The California Supreme Court addressed a similar issue in Wright v.Superior Court, 15 Cal.4th 521, 525-31, 936 P.2d 101, 103-07,63 Cal.Rptr.2d 322, 324-28 (1997), as follows:
 "Most crimes are instantaneous since they are committed as soon as every element is satisfied. Some crimes, however, are not terminated by a single act or circumstance but are committed as long as the proscribed conduct continues. Each day brings `a renewal of the original crime or the repeated commission of new offenses.' (Toussie v. United States (1970) 397 U.S. 112, 119, 90 S.Ct. 858, 862, 25 L.Ed.2d 56 (Toussie).) The distinction is critical because it determines the application of many legal principles such as the statute of limitations period, venue, jurisdiction, sentencing, double jeopardy, and, as here, the prohibition against ex post facto laws.
 "The concept of a continuing offense is well established. For present purposes, it may be formulated in the following terms: `Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.' (Duncan v. State (1978) 282 Md. 385, 390, 384 A.2d 456, 459; John v. State, [(1980) 96 Wis.2d 183, 188, 291 N.W.2d 502, 505]). Thus, when the law imposes an affirmative obligation to act, the violation is complete at the first instance the elements are met. It is nevertheless not completed as long as the obligation remains unfulfilled. `The crime achieves no finality until such time.' (United States v. Cores (1958) 356 U.S. 405, 409, 78 S.Ct. 875, 878, 2 L.Ed.2d 873; see State v. Morse (1969) 54 N.J. 32, 35, 252 A.2d 723, 725 [`Although a violation . . . comes into being at the expiration of the [grace] period, there is nonetheless a continuing requirement that a person within the reach of the statute shall meet its terms.']; see also Williams v. Superior Court [(1978) 81 Cal.App.3d 330, 343-344, 146 Cal.Rptr. 311]).
 "Determining if a particular violation of law constitutes a continuing offense is primarily a question of statutory interpretation. (Toussie, supra, 397 U.S. at p. 115, 90 S.Ct. at p. 860; see, e.g., People v. Keehley [(1987) 193 Cal.App.3d 1381, 1385, 239 Cal.Rptr. 5]; see Williams v. Superior Court, supra, 81 Cal.App.3d at p. 344, 146 Cal.Rptr. 311.) The answer, however, does not depend solely on the express language of the statute. Equally important is whether `the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one.' (Toussie, supra, at p. 115, 90 S.Ct. at p. 860; see United States v. Cores, supra, 356 U.S. at pp. 409-410, 78 S.Ct. at pp. 878-879.) Accordingly, we must consider both the text of section 290(f) and its statutory context. *Page 128 
 "In November 1994, section 290(f) provided: `If any person required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address. The law enforcement agency or agencies shall, within three days after receipt of this information, forward it to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence.' The provision is part of a comprehensive scheme enacted in 1947 requiring certain convicted sex offenders to register with appropriate law enforcement agencies; it assumed substantially its present form in 1950. (Stats. 1950, First Ex. Sess. 1949, ch. 13, § 1, p. 27.)
 "By its terms, section 290(f) does not expressly state a continuing offense. The obligation is, however, described as an affirmative, mandatory duty. Moreover, nothing in the statute indicates the mere passage of time will extinguish the notification requirement. (See In re Parks, supra, [(1986) 184 Cal.App.3d 476, 480, 229 Cal.Rptr. 202].) Nevertheless, the language is too uncertain to support a finding solely on that basis. (Toussie, supra, 397 U.S. at p. 115, 90 S.Ct. at p. 860.) We must therefore consult the broader statutory scheme to determine the Legislature's perception of the `nature' of section 290(f). (Toussie, supra, at p. 115, 90 S.Ct. at p. 860.)
 "Section 290 `applies automatically to the enumerated offenses, and imposes on each person convicted a lifelong obligation to register.' (In re Reed (1983) 33 Cal.3d 914, 919, 191 Cal.Rptr. 658, 663 P.2d 216; Barrows v. Municipal Court (1970) 1 Cal.3d 821, 825, 83 Cal.Rptr. 819, 464 P.2d 483.) Registration is mandatory (People v. Monroe (1985) 168 Cal.App.3d 1205, 1209, 215 Cal.Rptr. 51), and is `not a permissible subject of plea agreement negotiation' (People v. McClellan (1993) 6 Cal.4th 367, 380, 24 Cal.Rptr.2d 739, 862 P.2d 739). It is intended to promote the `"state interest in controlling crime and preventing recidivism in sex offenders."' (People v. Monroe, supra, at p. 1215, 215 Cal.Rptr. 51.) As this court has consistently reiterated: `The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' (Barrows v. Municipal Court, supra, at pp. 825-826, 83 Cal.Rptr. 819, 464 P.2d 483; id., at p. 827, 83 Cal.Rptr. 819, 464 P.2d 483; People v. McClellan, supra, at p. 376, fn. 7, 24 Cal.Rptr.2d 739, 862 P.2d 739; In re Reed, supra, at p. 919, 191 Cal.Rptr. 658, 663 P.2d 216; In re Smith (1972) 7 Cal.3d 362, 367, 102 Cal.Rptr. 335, 497 P.2d 807.) Plainly, the Legislature perceives that sex offenders pose a `continuing threat to society' (United States v. Bailey (1980) 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575) and require constant vigilance. (See In re Parks, supra, 184 Cal.App.3d at pp. 480-481, 229 Cal.Rptr. 202.)
 "To this end, a convicted sex offender must register not only on conviction, but whenever `coming into any city, county, or city and county in which he or she temporarily resides or is domiciled. . . .' (§ 290, subd. (a).) Supplemental address change information helps law enforcement agencies keep track of sex offenders who move within the same city or county or are transient. In large cities such as Los Angeles or huge counties like San Bernardino, where *Page 129 
 offenders can easily relocate without registering, section 290(f) seeks to prevent them from disappearing from the rolls. Ensuring offenders are `readily available for police surveillance' (Barrows v. Municipal Court, supra, 1 Cal.3d at p. 825, 83 Cal.Rptr. 819, 464 P.2d 483) depends on timely change-of-address notification. Without it law enforcement efforts will be frustrated and the statutory purpose thwarted. The statute is thus regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts. Compliance is essential to that objective; lack of compliance fatal.
 "Considering section 290(f) in light of the overarching legislative intent and comprehensive statutory scheme governing the registration of sex offenders, we conclude it imposes a continuing duty to give required notification of any change of address (see Kelly v. Municipal Court (1958) 160 Cal.App.2d 38, 45, 324 P.2d 990); accordingly, violation of that duty is a continuing offense. A defendant does not commit the crime only at the particular moment the obligation arises, but every day it remains unsatisfied. Given the persistent and palpable threat to society sex offenders represent, `the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one.' (Toussie, supra, 397 U.S. at p. 115, 90 S.Ct. at p. 860; United States v. Bailey, supra, 444 U.S. at p. 413, 100 S.Ct. at p. 636; see also United States v. Cores, supra, 356 U.S. at p. 408, 78 S.Ct. at p. 878.)
 "In In re Parks, supra, 184 Cal.App.3d 476, 229 Cal.Rptr. 202, the Court of Appeal reached the same conclusion with respect to violation of section 290, subdivision (a). `The statute does not relieve a person of the duty to register if he fails to do so within the [then applicable] 30-day time frame. The 30-day period was employed to discourage premature police action and allow a reasonable time to accomplish registration; it was not intended as a signal to sex offenders to "lay low" for one year [to permit the running of the statute of limitations]. The statute obviously intended the continuing failure to register to be the criminal act.' (In re Parks, supra, at p. 480, 229 Cal.Rptr. 202.) Thus, `the "explicit language of the substantive criminal statute [as well as the nature of the crime involved] compels" the conclusion it is a continuing offense.' (Ibid., citing Toussie, supra, 397 U.S. at p. 115, 90 S.Ct. at p. 860.). . . .
 "We recognize `that the doctrine of continuing offenses should be applied in only limited circumstances. . . .' (Toussie, supra, 397 U.S. at p. 115, 90 S.Ct. at p. 860.) Considering the legislative intent pervading section 290, we conclude violation of section 290(f) is one of those `limited circumstances.' To hold otherwise would produce an absurd result not reasonably contemplated by the Legislature. (See Parnell v. Superior Court (1981) 119 Cal.App.3d 392, 407, 173 Cal.Rptr. 906; United States v. Cores, supra, 356 U.S. at pp. 409-410, 78 S.Ct. at pp. 878-879; see also State v. Morse, supra, 54 N.J. at p. 35, 252 A.2d at p. 725.) Characterizing any violation of section 290 as an instantaneous offense would effectively `eviscerate' the statute. (In re Parks, supra, 184 Cal.App.3d at p. 481, 229 Cal.Rptr. 202.) A sex offender's duty to notify of an address change within the same city or county would cease the day after the grace period expired with no further obligation until he or she moved to another city or county. (Ibid. [sex offenders could `effectively lose themselves in the shuffle' if violation were an instantaneous offense]; *Page 130 
 United States v. Cores, supra, at p. 409, 78 S.Ct. at p. 878.) Undoubtedly, the Legislature anticipated the very circumstance when it enacted section 290(f). . . .
 "This construction also avoids statute of limitations problems (see In re Parks, supra, 184 Cal.App.3d 476, 229 Cal.Rptr. 202) and obvious difficulties of proof `complicated by the obscuration worked both by [the defendant's] own movement and by the passage of time.' (United States v. Cores, supra, 356 U.S. at p. 409, 78 S.Ct. at p. 878.) As the district attorney observes, sex offenders often have a transitory lifestyle or deliberately attempt to keep their movements secret. Requiring a prosecutor to prove when the person moved — information uniquely within that individual's knowledge and control — would hinder or even foreclose many prosecutions under section 290(f). (State v. Morse, supra, 54 N.J. at p. 35, 252 A.2d at p. 725 ['Surely the burden would not be the State's to prove the precise day or moment upon which the failure [to register] ripened into an offense.'].) Impeding vigorous prosecution can only encourage scofflaws, resulting in further violations and compounding `the substantive evil [the Legislature] sought to prevent.' (Toussie, supra, 397 U.S. at p. 122, 90 S.Ct. at p. 864.)
". . . .
 ". . . [Toussie] is distinguishable in several respects. To begin, the case involved a different statutory scheme addressing a different substantive evil enacted by a different legislative body. While the Supreme Court in Toussie provided useful guidance for determining whether an offense is continuing in nature, that guidance was advisory only and not premised on any constitutional mandate or general rules of construction. (See Toussie, supra, 397 U.S. at p. 133, 90 S.Ct. at p. 870 (dis. opn. of White, J.).) Nor did the court purport to formulate an analytical template applicable to all failure-to-register statutes. On the contrary, it reiterated the fundamental principle that the touchstone of all statutory interpretation is legislative intent. (Id., at p. 115, 90 S.Ct. at p. 860; see, e.g., Study v. State
(Ind.App. 1992) 602 N.E.2d 1062, 1068 [finding legislative intent that failure to register with securities commissioner constituted continuing offense]; State v. Morse, supra, 54 N.J. at p. 35, 252 A.2d at p. 725 [finding it `more consonant with the objective of the statute to deem noncompliance [with registration requirement] a continuing offense']; John v. State, supra, 96 Wis.2d at pp. 190-192, 291 N.W.2d at pp. 505-506 [finding failure to report change in status of household a continuing offense based on legislative intent].) Perforce, the intention of Congress concerning selective service registration can only marginally, if at all, inform our present inquiry.
 "Furthermore, although the high court was `convinced' that construing failure to register for the draft as an instantaneous offense would `not significantly impair either the essential function of raising an army or the prosecution of those who fail to register' (Toussie, supra, 397 U.S. at p. 123, 90 S.Ct. at p. 864), for the reasons discussed above we are not similarly convinced regarding section 290(f). As long as a reasonable number of eligible draftees comply, the noncompliance of some will not discernibly frustrate the purpose of selective service registration. By contrast, failure of any sex offender to comply with any provision of section 290, including subdivision (f), would substantially undermine the goal of assuring that such persons `shall be readily available for police surveillance *Page 131 
 at all times. . . .' (Barrows v. Municipal Court, supra, 1 Cal.3d at p. 825, 83 Cal.Rptr. 819, 464 P.2d 483.) The very nature of the `substantive evil [the Legislature] sought to prevent' virtually compels [this] conclusion since `each day's acts [leaving the offender's location unknown] bring a renewed threat.' (Toussie, supra, 397 U.S. at p. 122, 90 S.Ct. at p. 864; United States v._Bailey, supra, 444 U.S. at p. 413, 100 S.Ct. at p. 636.)"
(Footnotes omitted.) Similarly, we find that Toussie is distinguishable and that the trial court's reliance thereon was misplaced. A consideration of the express language of the statute, the nature of the offense, and the objectives of requiring sex offenders to register leads us to the conclusion that noncompliance with § 13A-11-200, Ala. Code 1975, constitutes a continuing offense. A sex offender's failure to register, and the continued act of remaining unregistered, would significantly impair the purpose of the statute and the Legislature's intent in creating the register. Therefore, we hold that the limitations period set forth in § 15-3-1, Ala. Code 1975, does not bar the prosecution in this case. To hold otherwise would thwart the Legislature's intent, eviscerate the statute, and encourage sex offenders to "lay low" and wait for the limitations period to expire. Accordingly, we reverse the trial court's judgment and remand this case to the trial court for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur. *Page 568